HENRY A. MOTT, as Administrator, etc., Respondent, *v.* WARREN ACKERMAN, Appellant.

The will of M. devised his real estate to his executors in trust, to hold one-third part thereof for the benefit of each of his three daughters during life. Upon the death of a daughter, leaving a husband and lawful issue living, it was declared that the executors should stand seized of her third "from and immediately after her death, upon trust for the sole use and benefit of such issue;" in case of the death of a daughter single and unmarried, "upon such trust, and for such purpose as she shall or may appoint by her last will;" in default of such appointment "for the sole use and benefit of her next of kin." *Held*, that the power of appointment related to the remainder in fee ; that in each event provided for, the trust in the executors upon the death of the daughter would be purely passive, the remainder vesting in the beneficiaries ; that the phrase in the clause giving such power of appointment " upon such trust " meant, not a trust to be created by the daughter and so limiting the power of disposition, but related to the trust in the executors.

As to one of the daughters who was married at the time of the execution of the will, it provided that in case she should give to her husband any part of her income from the estate or pay any of his debts she should thereupon forfeit all right and interest in and to such income. *Held*, that this did not affect the conclusion above stated ; it did not show any intent to limit the power of appointment.

One of the daughters died unmarried, leaving a will by which she gave all of her estate, real and personal, after payment of debts, to her two sisters who survived her, " and to the survivor of them," and to the heirs, executors and administrators of such survivor. *Held*, that this was a valid execution of the power of appointment and the title to one-third of the real estate passed under it ; that the limitation in the devise to the survivor did not work an unlawful suspension of the power of alienation (1 R. S. 724, § 24); that the estate upon the death of the testatrix passed to her two sisters as tenants in common, each taking a fee, that of the one dying first being defeasible by such death, and thereupon the entire absolute estate vested, which, therefore, could be aliened after two lives at most.

*It seems* that the two sisters took legal estates which were alienable, and their deed immediately on the death of the testatrix would have conveyed an absolute fee in possession.

The two surviving sisters purchased and owned as tenants in common certain other real estate; one of them subsequently died, leaving a will by which she gave to her executors a power of sale, to be exercised during the life of the surviving sister with her concurrence, and (the will then proceeds) " on the death of my said sister Maria, or as soon afterward as they may think advisable  *  *  *  and within three years from the

proof of this will," the executors were empowered and directed to con-
vert into money the real estate, etc.   Maria lived more than three years
after probate of the will.   After her death and about twelve years after
such probate the surviving executors contracted to sell the real estate to
defendant, who refused to complete the purchase, claiming, among other
things, that the power of sale could only be exercised within the three
years.   *Held* untenable ; that as the purposes of the will required a sale
the power was imperative (1 R. S. 734, § 96), and was so intended by the
testatrix, and the neglect to sell within the time specified did not destroy
the authority conferred.

The executor before bringing this action tendered a deed which was re-
fused.   Pending the appeal to this court said executor died and the
present plaintiff was appointed administrator, with the will annexed,
and the action was revived in his name.   *Held,* that the deed so
tendered could not now be delivered or treated as delivered with the
effect of passing the title ; but that plaintiff could make the conveyance.
(2 R. S. 72, § 22.)

Where a power of sale is given to executors for the purpose of paying debts
or legacies, and especially where there is an equitable conversion of land
into money for the purpose of such payment and for distribution, and the
power is imperative and does not grow out of a personal discretion con-
fided to the individual, such power belongs to the office of the executor
and under the statute passes to and may be exercised by an administra-
tor with the will annexed.

(Argued April 27, 1883 ; decided June 5, 1883.)

APPEAL from judgment of the General Term of the Supreme
Court, in the first judicial department, entered upon an order
made January 11, 1882, which affirmed a judgment in favor
of plaintiff upon a decision of the court on trial at Special
Term.

This action was brought to compel a specific performance
of a contract for the purchase of two pieces of real estate in the
city of New York, the one being No. 545 Broadway, and 116
Mercer street, the other No. 23 West Thirty-fourth street.

No question is made as to the validity or sufficiency of the con-
tract of purchase.   The property was sold at auction on the 25th
day of February, 1880, by William H. Onderdonk, as executor
of the two estates of Eliza Mott and Maria M. Hobby.   The
defendant, who was the purchaser, paid ten per cent of the
purchase-money, according to the terms of sale, but declined to

·accept the deeds of the premises, or either of them, or to pay the purchase-money, on the ground that a satisfactory title could not be given by the vendor as executor under the said wills.

The property described as No. 545 Broadway, and No. 116 Mercer street, was originally owned by Henry Mott, the father of said Eliza Mott and Maria M. Hobby. Henry Mott died in the year 1839, leaving a will by which he devised to his wife the use of No. 545 Broadway and its rear in Mercer street, together with an annuity during her natural life. He then devised as follows : " All my real estate, and the residue and remainder of my personal estate charged with the said annuity, and the life use of my house in Broadway, No. 545, and my stable in Mercer street, No. 94 " (now 116), " on the payment of my debts aforesaid, to my executors and executrixes hereinafter named, and their heirs and assigns forever, as joint tenants and not as tenants in common, in trust, nevertheless, to and for the uses and purposes hereinafter mentioned and declared, and to and for no other use, intent or purpose, that is to say : First, that my said trustees shall and do with all convenient speed, after my decease, collect and convert into money such part of the residue of my personal estate bequeathed to my said trustees as will not consist of money at my decease, and that they invest and keep invested the net proceeds thereof remaining after paying my debts and funeral expenses * * * and whenever the said real estate above devised to my trustees shall be sold, which my said trustees are authorized, but not enjoined, to sell until such sale becomes expedient or necessary for the final settlement and distribution of the said trust property or estate, the net proceeds thereof shall be invested and kept invested in the like manner." The will then proceeds, " my said trustees shall and do stand seized and possessed of one equal third part of the said trust property and estate, and all securities in which the same may become invested, subject to the aforesaid annuity to my wife, upon the following trusts, for the benefit of my daughter, Esther W. Mott, that is to say, upon trust to pay to my said daughter yearly, and every year during her natural life, the whole net annual income or product

of the said one-third part of the said trust property or estate, for her sole and separate use, independent of any husband she may hereafter have or take, and if my said daughter shall marry and afterward die in the life-time of her husband, leaving lawful issue living at her decease, then, from and immediately after her death, upon trust for the sole use and benefit of such issue; and if my said daughter shall be single and unmarried at her death, then, from and immediately after her decease, upon such trust and for such purposes as she shall or may appoint by her last will and testament, or any codicils thereto, and in default of such appointment, then, from and immediately after her death, upon trust for the sole use and benefit of her next of kin, and if such next of kin shall consist of more than one person, then the same shall be divided among them agreeably to the provisions of the statute of distributions." The next clause gives another third to Eliza Mott in identical terms, and the fourth clause of the will gives the remaining third to Maria M. Hobby, another daughter, who was then the wife of Seth M. Hobby, in the same terms, except so far as they are modified in consequence of her having a husband then living, and excepting that it was provided in case she should give to her said husband any part of the income from the estate, or pay any of his debts, "she shall thereby and for the same forfeit all her right and interest in and to" said income. Henry Mott's wife, died during his life-time. He executed two codicils to his will. By the last codicil he appointed his three daughters, Esther W. Mott, Eliza Mott and Maria Mott Hobby his sole executors and trustees, giving to them and each of them full power and authority. The three daughters all survived the testator. Esther W. Mott died first, without issue and unmarried, in the year 1853. She left a will by which, after ordering the payment of her debts, she devised as follows: "All the rest, residue and remainder of my estate, both real and personal, of every nature, whatsoever and wheresoever, I give, devise and bequeath unto my two sisters, Eliza Mott and Maria Mott Hobby, and to the survivor of them, and to the heirs, executors, administrators and assigns

of such survivor." She appointed Eliza Mott and Maria Mott Hobby executrices of her will. Eliza Mott next died, without issue and unmarried, about the 1st day of April, 1866. She left a will by which she refers to and recites the will of Henry Mott, the power it contains, the death of Esther W. Mott and her will, and the devolution of the title to the property affected by these wills. The will proceeds as to all the sixth part of the estate coming to her on the death of her sister Esther, and the third part, which she had power to dispose of by will, on her own death, and such part as might come to her on the death of her sister Maria, should she survive Maria, and all other real and personal estate which she may have power to dispose of, she bequeaths and devises the same ; first, to her sister Maria M. Hobby, for her natural life, after her death to William Underhill, in fee, subject to the payment of the legacies in the will specified. These legacies amount to about $38,000 independent of a residuary bequest ; Eliza Mott left personalty only to the amount of $1,500. Her will contained the following power of sale : "I authorize my executors, my sister Maria concurring, to make any devises, leases, sales and conveyances of all and singular the real estate, and to retain investments as they may be at my decease, and to make investments as they may think fit in real securities or in security of public debt of all moneys which shall come to their hands, and on the death of my said sister Maria, or as soon afterward as they may think advisable, taking into view the condition of the country and the probable increase of value of property, and within three years from the proof of this will, I authorize, empower and direct them to convert into money all my real and personal estate, which conversion shall be treated in law as if it had happened at the time of my sister's decease." She appointed as executors her sister, Maria M. Hobby, William Underhill and William H. Onderdonk.

Maria M. Hobby made a will identical with the will of her sister, *mutatis mutandis*, containing the same power of sale, and appointing her sister, Eliza Mott, and the same William Underhill and William H. Onderdonk to be the executors of her will. These wills were both executed on the 24th of April, 1862.

After the death of Eliza Mott, her will was proved, and the executors, Underhill and William H. Onderdonk, the original plaintiff herein, qualified. William Underhill afterward died during the year 1871. No consent appears to have been given by Mrs. Hobby during her life, and no sale was made by Eliza Mott's executors before her death. On the 8th of February, 1877, Mrs. Hobby died. Previous to her death, she executed a codicil to her will, by which she changed and increased the amount of legacies to be paid out of her personal estate, and the proceeds of the sales of her real estate, and also appointed Robert R. Willetts executor in the place of William Underhill, who had died. Robert R. Willetts and William H. Onderdonk qualified as executors under her will. The personal estate left by Mrs. Hobby amounted to about $15,000. The legacies in her will and codicil amount to nearly $80,000. Robert R. Willetts died in February, 1879. After his death Mr. Onderdonk was the sole executor, both of the will of Eliza Mott and of the will and codicils of Maria M. Hobby. Subsequent to the judgment of affirmance by the General Term herein, on the 12th day of December, 1882, said William H. Onderdonk died. Letters of administration with the will annexed upon the estate of Eliza Mott and Maria M. Hobby were issued by the surrogate of the county of New York in March, 1883, to Henry A. Mott, and the action was, by order of this court, revived in his name as such administrator. The property, No. 23 West Thirty-fourth street, was purchased by and conveyed to Eliza Mott and Maria M. Hobby during their lives.

*J. Harvey Ackerman* and *Isaac L. Miller* for appellant. No power is given by the will to the testator's daughters to dispose of the fee of any of his real estate. (*Taggart* v. *Murray*, 53 N. Y. 237 ; *Giles* v. *Little*, 14 Otto, 298.) The will of Esther W. Mott is no execution of the power of appointment given by the will of Henry Mott; it lacks all indication of intention to execute such power of appointment, which is indispensable. (*White* v. *Hicks*, 33 N. Y. 383 ; 2 Story's Eq. Jur., § 1062*a*, and notes.) Assuming that Esther W. Mott had

the power to devise some interest in the real estate of her father, and that it was her intention to make such devise by this will, then her devise is inoperative and void, because it attempts to unlawfully suspend the power of alienation of such interest. (1 R. S. 723, § 15; id. 737, §§ 128-129.) Where a power is given to executors to sell and convey real estate, and they fail to exercise the power within the period limited by the will, they cannot execute the power afterward so as to give a good title to a purchaser. (*Richardson* v. *Sharpe*, 29 Barb. 222.) It is enough for a defendant to show that, upon the whole case presented, the title is not free from suspicion, but is, to say the least, doubtful. (*McCahil* v. *Hamilton*, 20 Hun, 393.) Defendant should be relieved from his purchases and reimbursed all expenses incurred by him in connection therewith, particularly the expenses incurred in the examination of the title. (*Jordon* v. *Poillon*, 77 N. Y. 522; *Bigler* v. *Morgan*, id. 312.)

*James M. Varnum* for respondent. In an action to enforce a contract of purchase it is sufficient if the title can be made good at the time of the trial, even if it should turn out that the vendor was not competent to convey or able to make a perfect title at the time of the sale. (Willard's Equity, 295; *Seymour* v. *Delancey*, 5 Cow. 74; *Heartburn* v. *Auld*, 4 Cranch, 263; *Fagan* v. *Davison*, 2 Duer, 153; *Rigney* v. *Coles*, 6 Bosw. 479; *Schermerhorn* v. *Niblo*, 2 id. 161; *Ex parte Browning*, 2 Paige, 64; *Jenkins* v. *Fahey*, 73 N. Y. 355.) The provisions of the will of Henry Mott created a separate and distinct trust and estate for the benefit of each of his daughters, as to one-third of his lands, each independent of the other. (*Moore* v. *Hegeman*, 72 N. Y. 376; *Stevenson* v. *Leslie*, 70 id. 515; *Rooner* v. *Meiggs*, 64 id. 516; *Everitt* v. *Everitt*, 29 id. 39; 1 R. S. 732, §§ 77, 79, 81, 82, 84; *Grady* v. *Ward*, 20 Barb. 544; *Marvin* v. *Ward*, 56 id. 603; *Woodgate* v. *Fleet*, 64 N. Y. 573.) A construction which would be legal and feasible in its consequences will be preferred. (*Taggart* v. *Murray*, 53 N. Y. 236; *Quin* v. *Skinner*, 49 Barb. 134.) The

will of Esther W. Mott was a valid execution of the powers conferred by her father's will. ( *White* v. *Hicks*, 33 N. Y. 383; 1 R. S. 737, § 126 ; *Cutting* v. *Cutting*, 86 N. Y. 522; 1 R. S. 727, § 44; id. 724, §§ 24, 25, 27 ; id. 725, § 35.) There is no illegal suspension of the power of alienation by the provisions of any or all of these wills. (8 Bosw. 465; *Van Vechten* v. *Voator*, 63 N. Y. 55; *Crittenden* v. *Fairchild*, 41 id. 239; Jarman on Wills, chap. 16.) The power of sale contained in the will of Eliza Mott was not defeated or destroyed, nor its exercise rendered invalid, by the lapse of the three years spoken of in the will as the period within which the executors must sell. (*Bogert* v. *Hoertel*, 4 Hill, 495; *Fisher* v. *Banta*, 66 N. Y. 470; *Skinner* v. *Quinn*, 43 id. 105; *Kinnier* v. *Rogers*, 42 id. 503.) The courts, upon the application of a legatee or party beneficially interested in the residue, would compel executors or trustees in such a case to execute the power, although the time within which they were directed to sell had passed. ( *Wild* v. *Bergen*, 16 Hun, 127.) The court will determine the issue presented in this action and decide as to the validity of this title, without requiring the heirs of Henry Mott or the heirs of William Underhill either to be brought into this suit or to be made parties to a distinct action. (*Jenkins* v. *Fahey*, 73 N. Y. 355; *Taggart* v. *Mooney*, 53 id. 233; *Kinnier* v. *Rogers*, 42 id. 531; *Chittenden* v. *Fairchild*, 41 id. 289; *Grady* v. *Ward*, 20 Barb. 545; *Jarvis* v. *Babcock*, 5 id. 139; *Skinner* v. *Quinn*, 43 N. Y. 99; *Ackerman* v. *Gorton*, 69 id. 63.) The Court of Appeals should pass upon the preliminary objections of the appellant. (*Roome* v. *Phillips*, 27 N. Y. 357.) A delivery need not be absolute, it may be conditional. (*Hunter* v. *Hunter*, 17 Barb. 25–82; *Nottbeck* v. *Wilkes*, 4 Abb. 315 : *Hathaway* v. *Payne*, 34 N. Y. 92; 25 Wend. 43; Gerard's Titles [2d ed.], 516, 518; *Worrell* v. *Munn*, 1 Seld. 229 ; *Fisher* v. *Hall*, 41 N. Y. 417; *Dietz* v. *Farrish*, 44 J. & S. 190; *Sonnerlye* v. *Arden*, 1 Johns. Ch. 240; *Scrugham* v. *Wood*, 15 Wend. 545; 16 Barb. 264; *Ruslin* v. *Shield*, 11 Ga. 636; *Tooley* v. *Dibble*, 2 Hill, 641; *Wheelwright* v. *Same*, 2 Mass. 447; *Jackson* v. *Catlin*, 8 Johns. 120; Bouvier's Law Dic., title Escrow.) A

delivery of a deed by a grantor in escrow, to be delivered on the death of the grantor, is good. (34 N. Y. 92.) This is one of the cases where an administrator, with the will annexed, succeeds to the power of sale given to the executors by the will. (2 R. S. 72, § 22.) The provisions of the wills affected an equitable conversion of the real estate into personalty at the time the wills took effect. (*Horton* v. *McCoy*, 47 N. Y. 21 ; *Bogart* v. *Wertell*, 4 Hill, 492; 2 Story's Eq. Jur. 790, §§ 115, 116.) Where a testator directs something to be done by his executors which is imperative, or which is not clearly a personal trust or confidence, and which is legitimately connected with his duties as executor, it can be exercised by an administrator, even if it does relate to real estate. (*De Peyster* v. *Clendening*, 8 Paige, 296 ; *Bain* v. *Mattersen*, 54 N. Y. 663 ; *Bingham* v. *Jones*, 25 Hun, 6.) The court will not allow any trust or power in trust to fail through the lack of a person to administer or execute it. (*De Peyster* v. *Clendening*, 8 Paige, 296–311 ; 1 R. S. 730, §§ 70, 71 ; *King* v. *Donnelly*, 5 Paige, 46 ; 5 Wend. 224 ; 2 R. S. 72 ; *Roome* v. *Phillips*, 27 N. Y. 357, 4 Paige, 345, 353.)

FINCH, J. The validity of the title tendered to the purchaser in performance of the contract of sale depends, primarily, upon the construction of the will of Henry Mott, and those, respectively, of his three daughters. As to that of the father it is objected that the power of appointment by will, conferred upon such of them as should die unmarried and without issue, did not extend to and embrace the fee of any of his real estate. It had that effect or none. The daughters had each a life estate under a trust vested in the executors. Upon their deaths, or that of any one of them, the remainder in fee was left for ultimate disposition. An appointment by will could not relate to their life estates, for those would be ended by the same fact which made the appointment operative and at the same moment of time. The power, therefore, must naturally be a power in gross, and relate not to the life estate, but to the remainder in fee ; and that it did so is evident from the three provisions which contemplate the death of the daughters.

Those are adapted to three emergencies, viz.: (1) the death of a daughter married and leaving issue and a husband surviving; (2) the death of a daughter unmarried and without issue; (3) and, in the latter event, her death, without exercising the power of appointment. In the first event the executors were to stand seized for the use and benefit of the issue; in the second, for the purposes which the daughter should by will appoint; and in the third, for the use and benefit of such daughter's next of kin. In each event the trust in the executors would be purely passive, and the remainder vest in the beneficiaries. The criticism upon this construction is founded upon the words "upon such trust and for such purposes as she shall or may appoint by her last will and testament." It is quite evident that the phrase "upon such trust" means not a trust to be created by the daughter and so limiting her power of disposition, but relates to the trust in the executors; the same trust twice before mentioned and once afterward; in each instance held for different beneficiaries; and in the second of the three contingencies, for such purposes as the appointee should provide. The slight change of phrase from "upon trust" to "upon such trust" cannot be held to import the wide difference of intention asserted. No trust to be created by the will of Esther is foreshadowed or indicated by any apparent intention of the testator. If she sought to make one, it could not introduce a third life estate before the vesting of the fee, and it is difficult to see any useful purpose operating upon the testator to induce such a limitation. It seems to us quite plain that he meant for each of his daughters very nearly an estate in fee, by giving them not only an estate for life, but a power of disposition by will in case of their remaining unmarried; and a limitation confining that power to the creation of some trust, not defined, not intimated, left wholly at large, has no reason to support it, and is not forced upon us by the language of the will. The inquiry why the testator forfeited only the income of the married daughter in case she paid any of her husband's debts does not affect our conclusion. The obvious answer to the suggestion is that she had only that to be forfeited which

could be supposed to influence or affect her action. To strike instead at her power of appointment would have been not only ineffectual as a restraint, but would have pushed the consequences beyond her death.

It is next objected that the will of the unmarried daughter Esther, who died before her sisters, was not a valid execution by her of the power of appointment as to one-third of the estate. But the statute provides that lands embraced in a power to devise pass by a will which purports to convey the whole real property of the testator, unless a contrary intention is manifested. Esther's will directs the payment of debts and funeral expenses, and then gives to her sisters all the rest, residue and remainder of her estate, both real and personal, of every nature whatsoever and wheresoever. (1 R. S. 737, § 126.) The language is broad and brings the case clearly within the rule prescribed by the statute.

But it is further said that the disposition by Esther's will is invalid because it suspends the absolute power of alienation beyond the permitted lives; that the computation must run from the creation of the power in the will of her father; and so there is an estate for life in Esther; then a devise to the two sisters, Eliza and Maria; then one to the survivor of the two; and lastly one to the heirs, executors, administrators and assigns of such survivor. The last alleged limitation is very certainly not such. It is intended merely to characterize as a fee or absolute estate in the land or its proceeds, if converted, the interest vested in the survivor. The devise to Esther herself must be counted as one life. Then the estate passes to Eliza and Maria, but they take as tenants in common and not as joint tenants. (1 R. S. 727, § 44; *Purdy* v. *Hayt*, June, 1883\*) Each became the owner of an undivided half of Esther's one-third, and would have owned such one-sixth absolutely but for the further limitation to the survivor. That, it is argued, adds a second life. But it is a fee limited upon a fee, which may lawfully be done, where the contingency, if it should occur, must happen within two lives. (1 R. S. 724, § 24.)

*Ante*, p. 446.

The fee given to the one who shall first die is defeasible by such death, and thereupon the entire absolute estate vested, and could be aliened after two lives, at most. But the suspension did not exceed the life of Esther. Her sisters took legal estates in her one-third since the trust in her father's executors, after her death, was passive, and did not prevent the vesting of the entire title. While each held her fee in one-sixth defeasible upon a contingency, and each had a contingent remainder in the one-sixth of the other, these estates were alienable, and the deed of the two sisters, immediately upon Esther's death, would have conveyed an absolute fee in possession.

These are all the objections affecting the Broadway property by itself, but others are taken to the validity of the title to the property on Thirty-fourth street, and to the power to make any conveyance of any of the property by reason of the death of the sole surviving executor of the sisters pending the present litigation.

The property on Thirty-fourth street was purchased by and conveyed to Eliza and Maria, who owned it as tenants in common. Eliza died after Esther but before Maria. By her will she gave to her executors a power of sale to be exercised during the life of the latter with her concurrence. The will then proceeds : " and on the death of my said sister Maria, or as soon afterward as they may think advisable, taking into view the condition of the country, and the probable increase in the value of the property, and *within three years from the proof of this will*, I authorize, empower and direct them to convert into money all my real and personal estate, which conversion shall be treated in law as if it had happened at the time of my sister's decease." Maria lived more than three years after the probate of Eliza's will and no sale was made until after her death, and about twelve years after the probate of Eliza's will; and that was the sale to these defendants. It is now said that the power of sale could only be exercised within the three years, and that the deed of the executors tendered long after that period was invalid. But the testatrix added to her au-

thority a command.   She not only empowered her executors to sell, but directed them to do so.   The purposes of the will required such sale, and the power was imperative.   (1 R. S. 734, § 96.)

The neglect or misconduct of executors ought not to defeat the purposes of the testator, or destroy the rights which depend upon their proper performance of duty.   We are not justified in supposing that any such result was within the contemplation of Eliza, and should, therefore, read the provision for a sale within three years as not limiting the authority, but qualifying the command.   The meaning is, I " authorize " you to sell, and I " direct " you to do so within three years after probate.   It was an injunction to promptness in the exercise of the authority.   Neglect to obey the command did not destroy the authority conferred.   Nothing in the frame of the will indicates an intention to narrow or hamper the power to sell, but on the contrary the very provision as to time indicates a purpose to have the power exercised, and that promptly and without delay.   Any other construction would force us to say that the power was not imperative, and that the testatrix intended to make the whole purpose and plan of her disposition contingent upon the discretion of her executors in selling or not selling within three years.

During the life of Maria, her assent was essential to a lawful sale.   While she lived her interest and welfare was the paramount consideration.   She lived longer than the three years and it must be presumed withheld her assent to a sale.   The executors, therefore, could not literally obey the direction of the will, and were not even blamable for the delay.   Probably, just that emergency was not expected, but whether anticipated or not, the power of sale was and was intended to be imperative, and was not limited by the injunction as to time which qualified the command.

The remaining difficulty suggested by the appellant is one which has arisen since the commencement of the litigation and upon which we pass out of deference to the serious interests involved.   It is conceded that since the tender of the deeds by

the sole surviving executor and the judgment of the Special Term pronouncing them sufficient, and its affirmance by the General Term, the executor has died; that, thereafter, Henry A. Mott was duly appointed administrator with the will annexed of the estates both of Eliza and Maria; and that the action has been revived in the name of such administrator. The questions thus raised are whether the deeds executed by the deceased executor in his life-time and tendered to the purchaser can be now delivered, or be treated as delivered with the effect of passing the title; if not, whether the administrator with the will annexed can make the conveyance; or whether a trustee must be appointed by the Supreme Court for the purpose of an effective deed.

It is argued that the tender by the executor amounted to a conditional delivery of the deed; that the refusal to accept put solely upon the ground of doubt about the title, amounted to an acceptance upon condition that the title should be adjudged good; and that the decision of the Special Term performed the condition. We are not able to go so far as that. There was a tender but no delivery, for a delivery which vests title implies an acceptance, and here there was a refusal. We can say that a good title was offered but not that the deed was delivered. A delivery now, after the death of the executor, would be ineffectual.

But we are of opinion that the administrator with the will annexed has authority to make the necessary deed. The question has been left by the disagreement of the courts in some uncertainty which should be dispelled so far as it is possible to do so. The statute provides that administrators with the will annexed " shall have the same rights and powers and be subject to the same duties as if they had been named executors in such will." (2 R. S. 72, § 22.) In construing this statute great differences of opinion have arisen. (*De Peyster* v. *Clendining*, 8 Paige, 296; *Conklin* v. *Egerton*, 21 Wend. 430; 25 id. 224; *Roome* v. *Philips*, 27 N. Y. 357; *Bain* v. *Matteson*, 54 id. 663; *Bingham* v. *Jones*, 25 Hun, 6.) The

debate has turned mainly upon the inquiry what were the distinctive duties of an executor as such, and when they were to be regarded as not appertaining to his office, but as personal to the trustee. Where the will gives a power to the donee in a capacity distinctively different from his duties as executor, so that as to such duties he is to be regarded wholly as trustee and not at all as executor ; and where the power granted or the duty involved imply a personal confidence reposed in the individual over and above and beyond that which is ordinarily implied by the selection of an executor, there is no room for doubt or dispute. In such case the power and duty are not those of executors, *virtute officii*, and do not pass to the administrator with the will annexed. But outside of such cases the instances are numerous in which by the operation of a power in trust authority over the real estate is given to the executor as such and the better to enable him to perform the requirements of the will. It will not do to say, in the present state of the law, that whenever a trust or trust power is conferred upon executors, relating to real estate, some personal confidence distinct from that reposed in executors is implied. An executor is always a trustee of the personal estate for those interested under the will. We have recently so decided where the trust character could only be derived from the office and its relation to rights claimed through it. ( *Wager* v. *Wager*, 89 N. Y. 161.) And we have held, also, that, where a will devised and bequeathed to the executors the residue of real and personal estate, in trust, to sell and convert the same, to divide the balance into shares, to invest it in bond and mortgage, and to pay over the income for a time and finally the principal, the proceeds of the land sold became legal assets in the hands of the executor, for which he was liable officially, and for which his sureties were responsible ; and that an objection that he held the proceeds as trustee, and not as executor, and could only be made accountable in equity, was not well taken. (*Hood* v. *Hood*, 85 N. Y. 571.) We have no doubt, therefore, that where a power of sale is given to executors for the purpose of paying debts and legacies, or either, and

especially where there is an equitable conversion of land into money for the purpose of such payment and for distribution, and the power of sale is imperative and does not grow out of a personal discretion confided to the individual, such power belongs to the office of executor, and under the statute, passes to and may be exercised by the administrator with the will annexed. That is the case before us, and the deed of the administrator with the will annexed will be as effectual as would have been that of the executor if he had survived.

We have given no attention to the questions relating to the possible interest of the heirs of Underhill, since a release from them was tendered upon the trial and must accompany the delivery of the administrator's deed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.