The judgment is reversed, new trial granted, costs to abide event.

LANDON and MAYHAM, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.

| 59 153 |
| 133a 473 |

---

IN THE MATTER OF THE PETITION OF GEORGE AND JOHN CHRISTIE FOR THE APPOINTMENT OF A TRUSTEE, UNDER THE WILL OF OLIVER BUTTERFIELD, DECEASED, IN THE PLACE AND STEAD OF RHODA BUTTERFIELD, DECEASED.

*Trust, when valid as a power — when the power is attached to the office of executrix — unlawful suspension of the power of alienation.*

The testator, by his will, gave one-third of his estate, real and personal, to his wife Rhoda, and the rest and residue to his eight children and one grandchild. The estate was to be paid over within a year after the youngest child became twenty-one. He appointed his wife executrix and his son executor of his will, in which he further provided: "I give and devise all my real and personal estate of what nature or kind soever to my wife Rhoda, executrix, * * * in trust, for the payment of my just debts and the legacies above specified, with power to sell and dispose of the same."

*Held,* that as there was no authority given to Rhoda, as executrix, to receive the rents and profits of the property, no estate passed to her, but that the trust was

valid as a power, and that the land passed to the devisees named in the will subject to the execution thereof.

That such power in trust was held by her as a part of her authority as executrix, and not as an independent power, and might be executed, after the death of the executrix, by an administrator with the will annexed, and the case was not one in which the Supreme Court could appoint a trustee of the power and thus separate it from the office of executor.

The will further provided that no part of the testator's estate should be sold until all of his children arrived at the age of twenty-one years, of whom five were under that age at the time of his death.

*Held,* that this created an unlawful suspension of the power of alienation, as until the arrival of all the five children at the age of twenty-one years any conveyance made by the devisees would be liable to be defeated by the subsequent execution of this power of sale.

APPEAL by Andrew Minton and Fred. R. Butterfield from an order of the Supreme Court, entered in the office of the clerk of the county of Washington on the 20th day of March, 1890, which provided as follows:

"*It is ordered,* That Frank H. Graham, of Salem, N. Y., be and he hereby is appointed trustee, under the will of Oliver Butterfield, deceased, to perform and execute the trust contained in said will in the place and stead of Rhoda Butterfield, deceased, and that the said trustee hereby appointed do, before he enter upon the duties of his trust, execute and file in the office of the clerk of Washington county a bond, with sufficient surety, in the penal sum of one thousand ($1,000) dollars, conditioned for the faithful performance of his trust, the same to be approved by a justice of this court or a county judge; and further ordered, that the petitioners' costs and disbursements herein be adjusted and paid out of the proceeds of any property that may be lawfully sold by said trustee in execution of the said trust."

The proceeding was brought for the appointment of a trustee to perform and execute the trusts contained in the will of Oliver Butterfield, and to sell certain real estate and to pay the petitioners their debts against the estate of said deceased, with interest thereon, out of the proceeds thereof.

The will of Oliver Butterfield contained the following provisions:

"*First.* After all my lawful debts are paid and discharged I give and bequeath to my wife Rhoda, one-third of all my real and personal estate of every name and nature.

"*Second.* I give and bequeath all the rest, residue and remainder of my real and personal estate, of what nature or kind soever, to my children, Duane, Harriet, Jerome, Elijah, Rhoda, Mary, Fred., Harley and my grandson George, to be divided equally between them, share and share alike, except as to my daughter Harriet, whose share shall be but one-half the amount paid to each of the other children; which several legacies I direct and order to be paid to the said respective legatees within one year after the youngest of my said children shall have arrived at the age of twenty-one years. I do hereby nominate and appoint my wife Rhoda executrix, and my son Duane executor, of this my last will and testament, hereby revoking all former wills by me made.

"I give and devise all my real and personal estate, of what nature or kind soever, to my wife Rhoda, executrix of this my last will and testament, hereinbefore nominated and appointed, in trust, for the payment of my just debts and the legacies above specified, with power to sell and dispose of the same at public or private sale, and at such time or times, and upon such terms and in such manner, as to her seems meet, provided, however, that no part of my real estate, as aforesaid, shall be sold until each and all of my said children, hereinbefore named, shall have arrived at the age of twenty-one years."

*Young & Kellogg,* for Andrew Minton, appellant.

*A. D. Arnold,* for Fred. R. Butterfield, appellant.

*Job G. Sherman* and *Matthew Hale,* for petitioners, respondents.

LEARNED, P. J.:

Oliver Butterfield died July, 1868. By his will he gave one-third of his estate, real and personal, to his wife Rhoda. He gave the rest and residue, real and personal, to his eight children and one grandchild equally, except that one daughter was to have half of the amount which the others had. The legacies were to be paid within a year after the youngest child became twenty-one. He made his wife executrix and his son executor. He then continued: "I give and devise all my real and personal estate of what nature or kind soever to my wife Rhoda, executrix, * * * in trust for the

payment of my just debts and the legacies above specified, with power to sell and dispose of the same." As there was no authority given to Rhoda, executrix, to receive the rents and profits, no estate passed to her. But this trust was valid as a power, and the land passed to the devisees, subject to the power. (1 R. S., m. p. 729, § 56.) Therefore, the title to the land vested at once in the devisees named in the will; and all which Rhoda, the executrix, took was a mere power in trust, which enabled her to sell the land and apply the proceeds. She had no estate as trustee. As to the one-third which was devised to her, she could sell and convey that as owner. She held that power in trust as a part of her authority as executrix, not as any independent power. There had been much discussion in the courts whether a power thus given to an executrix to sell land for the purpose of paying debts and legacies passed to the administrator with the will annexed or not. It is not necessary to go back to the old cases, beginning with *De Peyster* v. *Clendining* (8 Paige, 296), for the matter has now been definitely settled by *Mott* v. *Ackerman* (92 N. Y., 539, at pages 553, 554). It is there held that such power belongs to the office of executor and passed to the administrator with the will annexed. This decision is a construction of 2 Revised Statutes (m. p. 72, § 22), defining the power of administrators with the will annexed. And thus construed, that section must constitute a practical exception to the general rule that, on the death of a trustee, the trust or the power in trust vests in the Supreme Court. (1 R. S., m. p. 730, § 68, 734, § 102.) Hence it follows that if there be any power in trust under this will yet to be enforced, it must be enforced through an administrator with the will annexed. This is not the case of a power in trust not connected with the office of executor. On the contrary, if this power be still in existence, it belongs to the office of the executor. And as the executrix is dead it must be executed (if at all) by an administrator with the will annexed. To hold otherwise would be to disregard the decision last cited, which must be held to have settled the question on which there had been uncertainty.

There are some other difficulties in this case, and we do not intend to decide whether the petitioner is, or is not, entitled to relief in any court. It is enough to say, first, that this is a mere power in trust which conveyed no estate to the executrix, Rhoda; second,

that the power, as it is given to pay debts and legacies, and especially as real and personal estate are mingled, belongs to the office of executor, and is not to be separated therefrom; third, that it would pass to the administrator with the will annexed; and, fourthly, that for these reasons it is not for the court to appoint a trustee of the power and thus to separate it from the office of executor.

Whether these petitioners can show themselves at this late day to be creditors of the deceased, and can obtain the appointment of an administrator with the will annexed, we do not decide. (2 R. S., m. p. 74, § 27.) There has been great delay. It does not appear precisely when the will was proved. But it is averred that the deceased left personal property worth over one thousand dollars, which, of course, would be the first fund for the payment of the debts. The executrix died July 29, 1887, and the heirs of the deceased have sold some of the land.

There is another point which should be considered. The will of the deceased provides that no part of his estate shall be sold until all of his children arrive at twenty-one. At his death five were under that age. Therefore, the trust power could not be executed until these five had arrived at twenty-one. The estate of the devisees was subject to the trust power, so that they could not convey a clear title until the five minors had reached twenty-one. In *Henderson v. Henderson* (113 N. Y., 1, at p. 13) it was held that a clause that executors having a power should not be compelled to make partition, etc., until five years from probate, did not suspend the power of alienation. For it was said that the power of sale was not suspended when the executor was merely permitted to delay. (*Robert v. Corning*, 89 N. Y., 225.) The present case is different. The executrix is here absolutely prevented from making a sale for a time limited by the arrival of five minors at maturity. And as the existence of this power, if valid, would suspend the absolute power of alienation by the devisees, the suspension, to be valid, may not be beyond the two lives limited by statute. (1 R. S., m. p. 723, § 15.) The absolute power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed. (§ 14.) Now, the executrix cannot execute the power until the majority of the five minors. And, until that time, the conveyance of the devisees would be liable to be defeated by the subsequent execution

·of the power. Hence the power does suspend the absolute power ·of alienation until that time, and is, therefore, void.

The order should be reversed, with ten dollars costs and printing ·disbursements, and motion denied, with ten dollars costs.

LANDON and MAYHAM, JJ., concurred.

Order reversed, with ten dollars costs and printing disbursements, ·and motion denied, with ten dollars costs.