Cora L. Lewis, Appellant, *v.* Celia M. Howe et al., Defendants, and Harry M. Porter et al., Respondents.

Real Property — Adverse Claim — Possession. The right of a party in possession of land to maintain an action against a party out of possession, for the purpose of trying title, did not exist at common law, but is conferred by sections 1638 and 1639 of the Code of Civil Procedure, which require the plaintiff or his grantor to have been in possession of the property for one year before the institution of the suit, and where this fact is not shown the action cannot be maintained.

*Lewis* v. *Howe*, 64 App. Div, 572, affirmed.

(Argued March 23, 1903; decided April 7, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 7, 1901, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Giles S. Piper* for appellant. The quitclaim deed from Chesbro and Hull, and Charles G. Case, 2d, and wife is void and conveyed no title back to Charles G. Case, 1st. (*Belmont* v. *O'Brien,* 12 N. Y. 404; *Marvin* v. *Clark,* 46 N. Y. 571; *Matter of Payton,* 111 N. Y. 486; *Townsend* v. *Fromer,* 125 N. Y. 446; Bigelow on Estoppel, 285.) Mary Juliet Porter did not take a vested remainder in the premises upon the death of Charles G. Case, 1st, under his will. (*Lougheed* v. *D. B. Church,* 129 N. Y. 211; *Plymouth Society* v. *Hepburn,* 57 Hun, 161; *Nelson* v. *Russell,* 61 Hun, 528.) But assuming that the title to the premises vested in Mary Juliet Porter upon the death of the testator, it was subject to be divested by her death before the death of Mary Ann Case, the life tenant. (*Campbell* v. *Stokes,* 142 N. Y. 23; *Camp* v. *Cronkright,* 59 Hun, 488; *Flanagan* v. *Staples,* 28 App. Div. 319.)

*Ora B. Gould* for respondents. The deed from Case to Chesbro and Hull conveyed no title. (*Seidelback* v. *Knaggs,* 44 App. Div. 169; 167 N. Y. 585; *Chamberlain* v. *Taylor,* 105 N. Y. 185.) The quitclaim deed from Chesbro and Hull and from Charles G. Case, 2d, and wife to Charles G. Case, 1st, released and quitclaimed all interest of the trustees and the *cestuis que* trust under the trust deed or power and estops the *cestuis que* trust from claiming under the trust deed or power. (Perry on Trusts [5th ed.], 104; *Butterfield* v. *Cowing,* 112 N. Y. 486; *Woodbridge* v. *Bockes,* 59 App. Div. 518; *Clark* v. *Crego,* 47 Barb. 614.) By the will, Mary Juliet Porter took a vested remainder in the real property in question, subject to be divested only by a sale made pursuant

to the power and for the purpose mentioned in the 1st clause of the will, and upon her death that remainder descended to her heirs at law. (*Matter of Brown*, 154 N. Y. 313; *Hersee* v. *Simpson*, 154 N. Y. 496; *Corse* v. *Chapman*, 153 N. Y. 466; *Campbell* v. *Stokes*, 142 N. Y. 23; *Allen* v. *Allen*, 149 N. Y. 280; *Haug* v. *Schumacker*, 166 N. Y. 506; *Nelson* v. *Russell*, 135 N. Y. 137; *Canfield* v. *Fallow*, 43 App. Div. 561; *Stewart* v. *Harrimann*, 22 Am. Rep. 408.) This action cannot legally be maintained. (*Mullen* v. *Mullen*, 139 N. Y. 218; *Moores* v. *Townshend*, 102 N. Y. 387; *Matter of N. Y. & L. E. R. R. Co.*, 110 N. Y. 379; *Bailey* v. *Briggs*, 56 N. Y. 407; *Hotchkiss* v. *Elting*, 36 Barb. 49; *Morris* v. *McClary*, 43 Minn. 346; *Bausman* v. *Fane*, 45 Minn. 412; *Churchill* v. *Onderdonk*, 59 N. Y. 136; *Austin* v. *Goodrich*, 49 N. Y. 266.) The appellant cannot repudiate the character of her title. She is bound by the recitals in the deed to her. (*Long* v. *Wilkinson*, 57 Ala. 259; *G. T. M. Co.* v. *Gill*, 111 Ill. 541; *Winn* v. *White*, 28 Ky. 521; *Hedges* v. *Wood*, 54 Ky. 68; *Kelso* v. *Stigar*, 24 Ala. 18; *Cox* v. *James*, 59 Barb. 144; 45 N. Y. 557; *Bliss* v. *Smith*, 1 Ala. 273.)

O'BRIEN, J. The learned trial judge decided this case in favor of the plaintiff, but the court below on appeal reversed his judgment and dismissed the complaint, on the ground, as stated in the body of the judgment, that it being an action " to compel the determination of claims to real property by a plaintiff in actual physical possession, it appeared that she had no interest in the lands such as is necessary to entitle her to maintain the action." The grounds thus stated are very comprehensive in their scope and embrace every possible question in the case. I think the conclusions of the learned court below were clearly right and it would be a very simple matter to state the reasons, except for the numerous inconsistent and conflicting theories upon which the plaintiff's claim rests and which appear in the complaint, the findings and the argument.

After carefully reading and considering them all it is quite impossible to state just what the plaintiff's claim is, except that it is reasonably clear that on some grounds she claims to own the property in question. She claims to own it under various titles, each inconsistent with the other. She claims under a trust deed executed in 1853. She claims under the will of the same person who executed that deed. She claims as grantee of the sole heir at law of the same person who made the deed and the will, on the theory that he died intestate. If the trust deed of 1853 remains in force, then the subsequent will was inoperative as to this property. If the will was operative then the trust deed must have been canceled. If inheritance, as in case of intestacy, was possible, then both the trust deed and the will are, for some reason, inoperative. The complaint, the findings and the argument all point to some or all of these theories without distinctly resting the case upon any of them, and so it will be necessary to discuss them all in order to show just where the case is and what the rights of the parties are.

At the very threshold of the controversy is the objection that, upon the complaint, the findings and the conceded facts the plaintiff cannot maintain the action whatever the merits of her case may be. At common law a party in possession of land could not maintain an action against a party out of possession for the purpose of trying title, but by statute such an action may be brought under certain conditions and limitations. It is a statutory action and the plaintiff must, by pleading and proof, bring the action within the terms and conditions of the statute. (*Churchill* v. *Onderdonk*, 59 N. Y. 136; *Austin* v. *Goodrich*, 49 N. Y. 266; *Bailey* v. *Briggs*, 56 N. Y. 407; *Hotchkiss* v. *Elting*, 36 Barb. 49.) The conditions upon which the plaintiff could maintain this action are prescribed by sections 1638 and 1639 of the Code of Civil Procedure. The plaintiff or her grantor must have been in possession of the lands for at least one year, and the learned counsel for the plaintiff says in his brief that " It is conceded that the plaintiff and her grantor have not been in actual possession of

the property for one year when the action was commenced,"
and such is the fact as appears from the complaint, the findings
and proofs, but he claims that the action may be maintained
under the general equity powers of the court to remove a
cloud upon title.   No such cause of action is stated in the
complaint, and if it was the case could not succeed, since every-
thing affecting the title was matter of record.   No evidence
extrinsic of the record was needed.   (*Mellen* v. *Mellen*, 139
N. Y. 218; *Moores* v. *Townshend*, 102 N. Y. 387.)   The pur-
pose of the limitation of one year in possession was to pre-
vent suits under the statute by transient occupants who might
go into possession for the very purpose of bringing such an
action, and that is what actually happened in this case, as
appears from the record.   This ground alone is sufficient to
sustain the judgment of reversal.   But under the statute the
complaint must set forth facts showing that the property, at
the time of the commencement of the action and for one year
next preceding, has been in the possession of the plaintiff or
those from whom he derived his title, and that the defendant
unjustly claims an interest in the estate of the character
specified in the section.   Every question bearing upon the
right of the plaintiff to bring the action under the statute
was distinctly raised at the trial.   The judgment, on appeal
below, is to the effect that none of these facts appear from
the complaint, the findings or the proofs, and, hence, the
reversal.   This conclusion of the learned court below was, I
think, clearly correct.   The condition of the title is clearly
disclosed by the record, and there is no dispute about the facts.

It is admitted that the plaintiff never had any title or color
of right to the property until the fourth day of March, 1899.
On that day Charles G. Case, second, and his wife executed and
delivered to the plaintiff a deed describing the property.   The
grantor in this deed stated in the body of the instrument that
the lands " were derived by him from his grandfather, Charles
G. Case, as heir at law and legatee."   The contradictory theories
that pervade and confuse this case and run through the com-
plaint, findings and the whole argument, may be said to have

originated in this deed and are based upon it. Of course, if the grantor took this land as legatee or devisee of his grandfather he must have taken under his will. If he took it as heir at law he must have taken it without a will or in hostility to it. The learned court below decided that he did not take it at all and, as I think, correctly. The grandfather died on the 9th day of December, 1875, leaving a will which was admitted to probate. If he then owned the property in question it is very clear that he disposed of it. By the first clause of his will he devised this property to his widow for life with power to the executors to sell it if necessary for her comfortable support. The remainder, after the termination of the life estate of the widow, he disposed of by the second clause, which reads as follows: "*Second.* In case my executrix and executors do not find it necessary to meet the provisions of the first clause of this will, to dispose of the property hereinafter mentioned during the lifetime of my said wife I do will and direct in regard thereto as follows, Item: I give and bequeath unto my adopted daughter the home where I now reside, including house, barn and grounds, with the fixtures and appurtenances thereunto belonging, the same to vest in her in fee upon the decease of my said wife to have and to hold forever." Mary Juliet Porter was the adopted daughter named in this clause as the devisee of the remainder. She died intestate on the 24th of June, 1892, and the defendants are her heirs at law. The widow, who was the life tenant, survived the adopted daughter several years and died on the 27th of January, 1899. There is no claim that the plaintiff or her grantor took anything under the terms of this will, although the learned trial court held that it was the *intention* of the testator that the grandchild and sole heir at law should take the remainder in preference to the adopted daughter. Just how that conclusion was reached it is impossible to ascertain and the learned counsel for the plaintiff does not attempt to support it and manifestly cannot. The second clause of the will is attacked only for two purposes: (1) To destroy the title of the defendants as the heirs of the adopted daughter to the

property since their title rests solely upon the will. (2) To nullify the clause disposing of the remainder in order to produce a case of intestacy to the end that the grandson, the plaintiff's grantor, would inherit without the will or in hostility to it. This theory assumes that the testator owned the property at the time of his death, which is a plain contradiction of another theory which asserts that he did not own it and which will be discussed hereafter.

The question now is whether the remainder vested in the adopted daughter at the death of the testator or was the devise to her defeated by her death before the life tenant? Except for the argument of the learned counsel for the plaintiff I should suppose that such a question was not fairly debatable at this day, but he insists that it was defeated, and as to the remainder the testator died intestate. The clause contains a clear devise of a vested remainder in words denoting a present gift, since he says " *I give.*" The words " to vest in her in fee upon the decease of my said wife " denote the time of possession and enjoyment. This clause of the will may be paraphrased as follows, in brief terms, and the meaning and legal effect will be clear: " Subject to the power of sale contained in the first clause, I give to my adopted daughter the home where I now reside, to have and to hold forever, possession and enjoyment to vest upon the decease of my said wife." The adopted daughter had a vested remainder under the will, which, upon her death, passed to the defendants, her heirs, subject to the life estate of the widow. This conclusion cannot be avoided without violating the plainest and most important rules of construction. It is elementary law that the courts should adopt that construction, whenever possible, which will avoid intestacy and which is most favorable to the vesting of the estate devised, and which will avoid the disinheritance of the remainderman who happens to die before the termination of the life estate. These rules are so familiar and so well settled that it is quite superfluous to cite authorities to support them. (*Matter of Russell,* 168 N. Y. 175; *Connelly* v. *O'Brien,* 166 N. Y. 406; *Matter of Brown,* 154 N. Y.

313; *Hersee* v. *Simpson,* Id. 496; *Corse* v. *Chapman,* 153 N. Y. 466; *Campbell* v. *Stokes,* 142 N. Y. 23; *Haug* v. *Schumacher,* 166 N. Y. 506; *Nelson* v. *Russell,* 135 N. Y. 137; *Moore* v. *Lyons,* 25 Wend. 119.) In the terse language of Chancellor KENT: " It is not the uncertainty of enjoyment in the future, but the uncertainty of *the right* to that enjoyment that makes the difference between the vested and the contingent interest." (2 Kent's Com. 206.) To hold that the testator intended by this clause of his will that no estate should vest in the adopted daughter except in the event that she survived the widow, and in case she did not that he intended to die intestate as to this property, would be pushing construction to the verge of absurdity. It would be a new principle in the construction of wills to hold that a man who had deliberately created a life estate in lands for the benefit of his widow and had limited upon that a remainder to his adopted daughter, all expressed in clear and appropriate words, nevertheless entertained the secret intention of dying intestate merely because he added to the devise of the remainder the words " to vest on the death of my wife," which expressed nothing more than what the law would do in case he had not used these words at all, since only upon the happening of that event does any such remainder ever vest in possession and enjoyment. If he intended that the remainder was in any event to go to any one else it was a very easy matter to say so. In this will the life estate was for the benefit of the daughter as well as the widow, since the latter was required to keep the daughter with her if she so desired, and provided for the maintenance of both out of the principal of the estate if necessary. To say that after these provisions he intended that the daughter should not take the remainder unless she survived the widow would seem to be a *reductio ad absurdum,* since it would impute to the testator the intention to die intestate in order to vest the fee in his heirs at law when he could very easily accomplish that purpose, if he so desired, by a single sentence in the will. The testator tells us that he intends to give the remainder to his daughter "*for-*

*ever.*" That is the last word that he used in framing the
devise, and it would be quite inconceivable to suppose that he
did not succeed in giving it to her at all, but did succeed in
giving it to some one else in pursuance of a secret design to
die intestate unless the daughter survived the widow. It is
very plain that the testator intended that the remainder should
vest in his adopted daughter in such a way and at such time
as to enable her "to have and to hold forever." These words
are utterly inconsistent with the idea suggested that he
intended, upon the contingency of her death before the widow,
that she was not to have or to hold at all, or that upon such
contingency the remainder was to be left undisposed of by
the will, and as to this important part of his property he
intended to die intestate. When did he intend that the long
period of time indicated by the word "forever" was to com-
mence? Was it to commence at his death or was it never to
commence in case the daughter died before the widow? Can
it be possible by any fair process of reasoning to say that a
person using such plain terms in his will with reference to a
remainder contemplated intestacy with reference to that
remainder? The contention that we should hold that the
adopted daughter dying before the life tenant took nothing,
in order to produce a case of intestacy, may, therefore, be
safely disregarded.

We now come to another theory of the case, and the one
upon which the plaintiff succeeded at the trial. It is contra-
dictory of the theory of intestacy, of any right under the will,
and, indeed, of every other right to the property. On the
29th of October, 1853, Charles G. Case, the grandfather of
the plaintiff's grantor, being then the conceded owner in fee
of the property in question, conveyed it in trust to two trustees
for the uses and purposes specified in the deed, namely, for the
benefit of his son, the father of the plaintiff's grantor, and for
the benefit of any grandchild living at the death of the donor.
No rights were, by the terms of this deed, to pass to any one
until the death of the donor and his wife, and they were, in
the meantime, to have the full possession of the property, with

all the rents and profits, during the life of the longest liver, and until then neither donee nor any one claiming under him was to take any interest under the conveyance. The son of the donor, who was the beneficiary under this deed, died intestate prior to the year 1874, and whatever interest was conveyed under this trust deed, as it is called, passed to his son and only heir at law, the plaintiff's grantor. It is admitted on all sides that no title passed under this deed either to the trustees or any one else, and that the deed created at most only a power in trust in favor of the donee and his heirs. If nothing else happened it is quite possible that the plaintiff's grantor, as sole heir of the donee of the power, would take some equitable interest in the lands, but on the second day of May, 1874, the plaintiff's grantor, the only person then interested in the execution of the power, with his wife and the two trustees, reconveyed the property to his grandfather, the donor of the power. The title and every interest in the lands became thus reinvested in the original owner, who subsequently devised it by the will already referred to. The learned trial judge decided that this deed was null and void, and consequently that the rights of the grandson under the power were not affected thereby. Of course, if that is so, then the grandfather had nothing that would pass under his will, and the theory of intestacy and of some right under the will is exploded, since the grandson would take as purchaser or grantee under the deed of 1853, if at all. This is admitted by the learned counsel for the plaintiff in the following significant statement in his final brief: "If the plaintiff has any estate in the property, it is the estate once held by Charles G. Case, the grandfather. The plaintiff claims that her grantor took the property under the trust deed subject to the life estate of the grandfather's widow." In the last analysis that is the only question in this case. It may be difficult to determine just what the interest was that passed to the plaintiff's grantor, the son of the donee of the power; but whatever it was it could be extinguished by the consent of all the parties in interest, and was extinguished by the deed

of 1874, in which the trustees, the only beneficiary who then had or could have thereafter acquired any interest in the trust power, united. That conveyance had the effect of placing the whole title and interest, legal and equitable, in the person who had it prior to the deed of 1853. That deed benefited no one and only created an anomalous condition respecting the title which the law did not compel the parties in interest to preserve or perpetuate. The united consent of all the parties in interest terminated whatever interest had passed under that deed. The parties were all *sui juris*, and no interest, however remote, was left out of consideration. The consent of all the parties in interest expressed by this deed reinvested the original donor with a perfect title, and so the learned court below held, and so this court has held. (*Butterfield* v. *Cowing*, 112 N. Y. 486 ; *Woodbridge* v. *Bockes*, 170 N. Y. 596.) In the latter case it was held that a testamentary trust in favor of remaindermen could be extinguished when the beneficiaries, being of full age, joined in a release to the trustee. That is much more than is necessary to hold in this case since there was really no title in the trustees and no trust but a mere power in trust which remained dormant and wholly unexecuted.

The judgment appealed from is right and should be affirmed, with costs.

HAIGHT, J. (dissenting). The order of the Appellate Division does not show that the reversal was upon the facts, and, therefore, it must be assumed that the reversal was upon the law. (Code of Civil Procedure, section 1338.) Among other facts it is alleged in the complaint and found by the trial court, that on the 29th day of October, 1853, Charles G. Case was the owner in fee and in possession of the premises described in the complaint, and on that day he executed and delivered a deed of the same to Thomas W. Chesbro and Amos G. Hull, as trustees for Charles James Case and his lawful heirs, which contained the following provision : "It is understood and agreed that this grant is made in trust for

the benefit of Charles James Case of Fulton and the lawful children of the said Charles James Case under the conditions and restrictions following, to wit: * * * And it is further understood that in case the said Charles James Case should have a lawful child or lawful children living at the time of the decease of the said C. G. Case, the grantor herein, and at the time of the decease of the present wife of said grantor, then the premises hereby conveyed are to vest in such child or children." The deed contained the further provisions to the effect that the grantor and his wife should retain possession of the premises during their lives. Charles James Case was the son of Charles G. Case, the grantor, and died on the 20th day of May, 1874, leaving him surviving Charles G. Case, 2nd, his only heir at law. Thereupon Charles G. Case, 2nd, and his wife joined with the trustees named in the deed in a quitclaim deed of the premises back to his grandfather, Charles G. Case, the grantor in the trust deed. Charles G. Case then executed his last will and testament, bearing date the 22nd day of May, 1874, in which he devised the use and occupancy of the premises in question, together with other property, to his wife, Mary Ann Case, during her natural life, with a power to sell and the right to use the proceeds, if necessary, for her support, and then provided as follows: " In case my executrix and executors do not find it necessary to meet the provisions of the first clause of this will, to dispose of the property hereinafter mentioned during the lifetime of my said wife, I do will and direct in regard thereto as follows: Item. I give and bequeath unto my adopted daughter the home where I now reside, including house, barn and grounds with the fixtures and appurtenances thereunto belonging, the same to vest in her in fee upon the decease of my said wife, to have and to hold forever." Charles G. Case departed this life on the 9th day of December, 1875, leaving Mary Ann Case, his widow, and Charles G. Case, 2nd, his only surviving heir at law. Mary Juliet Porter was the person referred to as his adopted daughter and she died without issue on the 24th day of June, 1892, and Mary Ann Case, the widow, died on the

27th day of January, 1899, six years and a half after the death of the adopted daughter. Immediately after the death of Mary Ann Case, the widow, Charles G. Case, 2nd, the grandson, entered into the possession of the premises and continued to reside therein until the 4th day of March, 1899, when he sold and conveyed the same to the plaintiff. The defendants are the heirs at law of Mary Juliet Porter.

It is further alleged and found as a fact that the testator by his last will and testament, "made further provisions for the benefit of the said Mary Juliet Porter and his said grandson, and it was his intention that in case said Mary Juliet Porter should die before the death of his said wife, Mary Ann Case, that then and in that case under and by virtue of said last will and testament the title to the premises and lands hereinbefore mentioned should vest in fee upon the death of said Mary Ann Case in the said Charles G. Case, 2nd." The trial court then found as conclusions of law that the quitclaim deed by Charles G. Case, 2nd, back to his grandfather conveyed no title or interest to him; that no right, title or interest in or to the premises ever vested in Mary Juliet Porter under or by virtue of the will, and that the defendants had no right, title or interest in the premises.

I intend to discuss but one question raised upon this appeal, and for that purpose shall assume, but without so deciding, that the quitclaim deed from Charles G. Case, 2nd, and the trustees to Charles G. Case was valid, and restored the title to the premises to the original grantor, so that he could, if he so desired, devise the same to his adopted daughter. The question then arises as to the construction that should be placed upon the provision of the will to which we have referred. The Appellate Division, without discussing the question, has asserted that under the provisions of the will the fee to the premises vested in the adopted daughter, and upon her death descended to her heirs at law. In this I differ with the conclusion reached by that learned court. Its conclusion is not consistent with the facts as found, which that court has by its order stated to be undisputed. In construing wills the chief

duty of the court is to ascertain and determine the intent of the testator. The determination of such intent usually involves the consideration of a mixed question of law and fact. The court has to take into consideration the provisions of the instrument and the surrounding circumstances under which it was executed. The trial court, as we have seen, has found as a fact that the intent of the testator was to vest the fee in his grandson in case of the death of his adopted daughter before that of his widow. If this was his intention, then certainly he could not have intended to vest the fee in his adopted daughter as of his death, so that the fee would descend to her heirs at law in case of her death before that of the widow.

While this appeal might be disposed of upon the finding alluded to, I prefer to rest my conclusion upon a construction of the instrument itself. It appears to me that the intention of the testator is hardly open to question, and in reaching that conclusion I have had in mind the statute defining vested remainders, and the rules followed by the courts in ascertaining the intention of testators. Where a testator has created a life estate with a remainder to a person in being, that person takes a vested remainder from the date of the death of the testator; but the testator may by the express provisions of his will otherwise provide, and that is what it appears to me he has done in this case. He has expressly specified that the premises in question should vest in his adopted daughter in fee upon the decease of his wife. There is a definite time named when the vesting shall take place, and obviously that carries with it an implied negation of a vesting at an earlier period. (2 Jarman on Wills, 467.) It is the fee that then vests, not the possession only, as is claimed. Had the testator intended that the premises should vest in possession on the death of his widow it would have been an easy matter to have so said, but such is not his direction. Instead, he specifically states that the *fee*, that is, the title, interest, ownership of his adopted daughter shall then vest. This distinguishes the case from the numerous cases on record in which remainders have

been held to be vested as of the date of the death of the testator.

But it is now contended on behalf of the defendants that a rule that is sometimes recognized by the court in ascertaining the intention of the testator should be invoked for the purpose of showing that the testator did not intend what he said in the will, but that he, in fact, intended that the remainder should vest as of the date of his death. This rule is that where a person has left a last will and testament it ordinarily will not be presumed that he intended to die intestate as to any portion of his estate. But this rule, like most of the rules sometimes resorted to by the courts in construing wills, has its exceptions, and one is that a testator ordinarily will not be presumed to have intended that his estate should go to strangers to his blood or to persons of whom he had never heard or seen. The record before us does not disclose the history of the adopted daughter. Where the testator found her or how he came to take her into his family does not appear. It is not claimed that he ever legally adopted her so as to entitle her to inherit as an heir at law. We are not advised as to whether he ever saw or heard of the defendants who appear to be her remote heirs at law. From the order of publication appearing in the record it appears that they are non-residents of the state, some residing in the state of Kansas. To hold that the testator intended that the fee should vest in his adopted daughter as of the date of his death is to hold that, in case of her death before that of the testator's widow, he intended that these premises should descend to these defendants, of whom he possibly had never before heard, in preference to his grandson, with whom he was apparently upon good terms and who had but a few days before given him a quitclaim deed of these premises. Such I do not not believe was his intent and purpose. I think that he meant just what he so clearly stated, and that is, that the fee should vest in his adopted daughter at the death of his widow, and, she having died before the widow, the devise lapsed. No other provision having been made in the will

with reference to this particular piece of property it descended
to the testator's heir at law, his grandson, Charles G. Case,
2nd, who by his conveyance to the plaintiff vested the title in
her.   The other provisions of the will are in harmony with
this view.   The testator also sets apart the sum of $20,000.00
to be held in trust for his adopted daughter during her natural
life, containing a provision to the effect that in case of her
death, leaving lawful heirs of her body, the fund should go to
such heirs; but if she left none, it was then given to his
grandson, Charles G. Case.   The same provision appears in
the residuary clause, in which his estate is divided into two
parts, one for the benefit of his adopted daughter and the
other for the benefit of his grandson, and here we find a
similar provision with reference to the issue of her body in
case of her death.   It is thus apparent that the purpose of the
testator was to divide his estate between his grandson and his
adopted daughter, and in case either should die leaving
children, the issue or the heirs of their bodies, such children
should take the parent's portion, but in no place in the will
is there any mention of the next of kin or heirs at law of his
adopted daughter other than the issue of her body.

It has been persistently insisted on the trial of this action
and by the Appellate Division that this action was brought
for the determination of a claim to real property under the
Code of Civil Procedure, sections 1638 and 1639.   If such is
the nature of the action it was prematurely brought and can-
not be maintained, for it expressly appears that only about
eleven months intervened after possession of the premises was
taken by the plaintiff's grantor before the bringing of the
action, and the complaint fails to comply with the express
provisions of the Code in not alleging "that the property at
the commencement of the action was and for one year next
preceding has been in his possession or in the possession of
himself and those from whom he derived his title."   But
such does not appear to me to be the nature of the action.
The complaint very fully sets forth all the facts and then con-
cludes by asking judgment that the deed executed by Charles

G. Case, 2nd, and wife to Charles G. Case be declared to be a cloud upon the plaintiff's title and null and void, and that it be adjudged that Mary Juliet Porter or her heirs at law took no vested interest in the property under the will of Charles G. Case. While the deed and will are matters of record, the circumstances under which they are sought to be annulled or adjudged to have lapsed depend upon facts not of record, which can only be established by oral testimony which may soon be lost to the plaintiff and her title thereby rendered defective. It appears to me that the allegations of the complaint bring the case clearly within that of *Fonda* v. *Sage* (48 N. Y. 173), in which it was held that to constitute a cloud upon a title " it is sufficient that there be a deed, valid upon its face, accompanied with a claim of title under such circumstances that a court of equity can see that the deed is likely to work mischief to the real owner. It is not necessary in order to maintain an action to remove the cloud and quiet the title, that the claimant should have a *prima facie* record title which the real owner must call in extrinsic evidence to overthrow."

I think the judgment of the Appellate Division should be reversed and that of the trial court affirmed, with costs to the plaintiff in the Appellate Division and this court.

BARTLETT and VANN, JJ. (and GRAY and MARTIN, JJ., in result on first ground), concur with O'BRIEN, J.; PARKER, Ch. J., concurs with HAIGHT, J.

Judgment affirmed.