OCTAVIUS O. COTTLE et al., as Executors of JOHN J. P. READ,
    Deceased, Appellants, *v.* AUGUST SIMON, Respondent.

1. EJECTMENT — EVIDENCE — TITLE BY SHERIFF'S DEED — BONA FIDE
PURCHASER — NOTICE.   In an action of ejectment to enforce a title based
upon a sheriff's deed given on an execution sale under a judgment by
default subsequently vacated, an attack by the defendant upon such
record title, on the ground that the sheriff's grantee was not a *bona fide*
purchaser, may be established by showing knowledge by the plaintiff in
ejectment of the facts and proceedings leading up to the default judg-
ment, where such a community of interest and action is shown to have
existed between the sheriff's grantee, the plaintiff in the default judg-
ment and the plaintiff in ejectment as to render the sheriff's grantee
chargeable with notice of such facts and proceedings — as, where they
were, respectively, a mother and her unmarried daughter and son, who
all lived together and held their property in common.

2. EVIDENCE.   When, in an action of ejectment to enforce a title based
upon a sheriff's deed given on an execution sale upon a judgment by
default subsequently vacated, the defendant has given proof tending to
show that the execution plaintiff, the sheriff's grantee, and the plaintiff in
ejectment held all their property in common, as bearing upon the stand-
ing of the sheriff's grantee as a *bona fide* purchaser, it is competent for
the plaintiff in ejectment to show that the property involved in the action
in which the execution sale was had belonged to the plaintiff in that action
separately, and that such plaintiff was the sole owner of the judgment
entered by default, and that neither the sheriff's grantee nor the plaintiff
in ejectment had any interest therein.

*Read* v. *Simon*, 92 Hun, 607, reversed.

(Argued June 10, 1897; decided October 5, 1897.)

APPEAL from a judgment of the General Term of the
Supreme Court in the fifth judicial department, entered
December 31, 1895, which affirmed a judgment in favor of
defendant entered upon a verdict directed by the court, and
also affirmed an order denying a motion for a new trial upon
the minutes.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Edmund P. Cottle* for appellants.   The sale of the premises
under the judgment was valid, and did not become invalid by
any subsequent action of the court. (Gerard on Titles [3d

ed.], 780; *Woodcock* v. *Bennet,* 1 Cow. 734; *Manning's Case,* 8 Coke, 284; *Holden* v. *Sackett,* 12 Abb. Pr. 473; *Kissock* v. *Grant,* 34 Barb. 144; *Wood* v. *Jackson,* 8 Wend. 10; *Bank of U. S.* v. *Bank of Washington,* 6 Pet. 8; *Goudy* v. *Hall,* 36 Ill. 313, 319; Code Civ. Pro. § 1292.) Where the court has jurisdiction and the judgment is regularly entered, but is subsequently set aside on motion on affidavits, it is no more than a reversal for error, and the setting it aside on that ground does not affect the validity of the sale. (*Day* v. *Bach,* 87 N. Y. 61.) If the court, on vacating the judgment to enable the defendants to answer and defend on the merits, had power to order restitution, it did not do so. The order made was a favor granted to the defendants. The court, in granting the favor, had the right to limit it, and was not bound to set aside the sale. (*McCall* v. *McCall,* 54 N. Y. 541; *Parker* v. *Lythgoe,* 38 N. Y. S. R. 887; *Estus* v. *Baldwin,* 9 How. Pr. 80.) The sale was not made to the judgment creditor, but to a third party, who was a stranger to the record. (*N. B. Bank* v. *Hitch,* 23 Civ. Pro. Rep. 10; *Lovett* v. *G. R. Church,* 12 Barb. 83; Code Civ. Pro. §§ 445, 1323; *Day* v. *Bach,* 87 N. Y. 61.) The defendant, August Simon, cannot question the regularity of the sale, or demand restitution. (*Oaks* v. *Williams,* 107 Ill. 154; *Shirk* v. *M. & N. C. C. R. Co.,* 110 Ill. 661; *Smith* v. *McGowan,* 3 Barb. 404, 409; *Lovett* v. *G. R. Church,* 12 Barb. 82; *Gaskin* v. *Anderson,* 55 Barb. 262; *Cunningham* v. *Cassidy,* 17 N. Y. 276.) A voidable conveyance cannot be attacked collaterally. (Vanfleet's Collateral Attack, § 3.) The court erred in admitting parol evidence of declarations in derogation of Mrs. Read's record title while she was not in possession. (*Jackson* v. *Burtis,* 14 Johns. 391; *Jackson* v. *Shearman,* 6 Johns. 19; *Metcalfe* v. *Van Benthuysen,* 3 N. Y. 424; *Everett* v. *Everett,* 48 N. Y. 218; *Jackson ex dem.* v. *Cris,* 11 Johns. 437; 3 R. S. [7th ed.] 2326, § 6.)

*George W. Cothran* for respondent. Elizabeth Read was not a *bona fide* purchaser. (*Galpin* v. *Page,* 18 Wall. 350; *Simonds* v. *Catlin,* 2 Cal. 63; Freeman on Executions, § 340;

Freeman on Judgments, §§ 482, 484; *Guiteau* v. *Wisely*, 47 Ill. 433; *Jackson* v. *Cadwell*, 1 Cow. 622; *Reynolds* v. *Harris*, 14 Cal. 680; *McJilton* v. *Love*, 13 Ill. 486; *Barber* v. *Reynolds*, 44 Cal. 520; *Dillon* v. *Cockcroft*, 90 N. Y. 649; *Provost* v. *McEncroe*, 102 N. Y. 650; *Lockwood* v. *Bartlett*, 130 N. Y. 340–345; *Daly* v. *Wise*, 132 N. Y. 306; *Kirtz* v. *Peck*, 113 N. Y. 222; *Shultes* v. *Sickles*, 147 N. Y. 705.) On setting aside the judgment, the execution falls with it without any express order to quash the execution. (*Ballard* v. *Whitlock*, 4 Grat. 235.) The purchaser was made a party to the proceedings to vacate the judgment and participated in the litigation voluntarily, and must be held bound by the decision of the court. (*Coleman* v. *McAnulty*, 16 Mo. 173.)

BARTLETT, J. The question presented for determination at this time arises on a somewhat complicated state of facts.

This is an action of ejectment to recover possession of certain premises in the city of Buffalo, and was begun in February, 1885.

The original plaintiffs were John J. P. Read and his sister, Elizabeth A. S. Read.

Elizabeth died during the pendency of the action, leaving John her sole heir at law, and later he departed this life and his executors are prosecuting this appeal.

This action was not tried until October, 1894, nearly ten years after it was commenced, and. resulted in the directed verdict for the defendant.

The common source of title of both claimants is a deed from one E. G. Gray to John Adler, dated March 13, 1841.

The plaintiffs claim title under a sheriff's deed dated March 25, 1868, running to Elizabeth Read, the mother of the original plaintiffs in this action.

The defendant, August Simon, claims under a deed from John Adler, dated March 13, 1882.

This deed was evidently executed and delivered upon the theory that the sheriff's deed of 1868 was void for the reason that the grantee was not a *bona fide* purchaser.

The judgment under which the sale was conducted having been subsequently vacated and set aside, Elizabeth Read's title was treated as extinguished.

It, therefore, becomes necessary to examine the proceedings in the former action which resulted in the sheriff's deed.

In 1866 Elizabeth A. S. Read, the daughter of the grantee in the sheriff's deed, and one of the original plaintiffs in this action, brought suit against John Adler and John P. Adler to recover possession of certain real estate in Buffalo (not the real estate involved in the present action), and on the 6th day of March, 1866, entered judgment by default.

The costs were $32.66.

Execution was duly issued to satisfy this amount, and the sheriff sold the interest of the Adlers in the property involved in this action, which was the entire title, and the same was bid in by Elizabeth Read, the mother, for $17.50.

The present value of this property, so purchased for an insignificant sum, was stated on the argument to be from $5,000 to $6,000, and it is alleged in the complaint that the value of the use and occupation for which a recovery is sought, was $500 a year, which is strongly confirmatory of the above valuation.

Some eight years after this judgment by default, in June, 1874, the defendants moved to vacate the judgment, including execution and all subsequent proceedings, on the ground of non-service of summons, excusable neglect to move and a number of technical grounds.

The motion was granted to this effect, that the judgment " be and the same is hereby set aside and the default of the defendants, upon which judgment was allowed, be opened as to both said defendants, and that they have leave to answer and be let in to defend this action."

This relief was granted on the payment of $10 costs of opposing the motion within ten days.

There was no affirmative refusal to set aside the execution and subsequent proceedings, as prayed for, but the order is silent on that subject.

It may be remarked in passing that about eighteen months after the default was so opened, and in the month of February, 1876, the case was tried and resulted in a recovery by plaintiff.

It was, under this state of facts that the case at bar was commenced in 1885, seventeen years after the sheriff's deed, and tried in 1894, as before stated, nearly ten years after it was instituted.

It certainly may be regarded as a case where plaintiffs slept long upon their alleged rights.

The two chains of title were introduced in evidence, as were the motion papers in the proceedings to open the default in the old suit, but there was very little oral evidence.

The main effort of the learned counsel for the defendant at the trial was to show that Elizabeth Read, the grantee in the sheriff's deed, could not be regarded in law as a *bona fide* purchaser at the sale, for the reason that she was chargeable with knowledge of all the facts connected with the judgment that had been vacated and set aside.

To this end he placed upon the stand the counsel for the Adlers in the motion to open the judgment against them taken by default in the old suit; he also swore a witness who was present when counsel had an interview with Elizabeth Read and her daughter, Elizabeth A. S. Read, and her son, John J. P. Read, in June, 1874, at the time the motion papers to open the default were served.

The counsel was asked this question:

"Q. State what it was she said to you in relation to how the property she had was held between them, between her daughter and her son and herself? A. My recollection is that she said they were all one. What was one's was the other's, and they were all one.

"Q. In that conversation, as a part of her answer, what did she say to you in regard to when the children got money or wanted money? A. I think she said, according to the best of my recollection, that she was the center; they came to her when they wanted money, and brought her money."

The other witness testified, after the parties got together, as follows: "They entered into a conversation and Mrs. Elizabeth Read, the mother, she stated in the presence of Mr. Beckwith and me that 'they had all the property what they have and all the money in common, so that if her son John brought home a thousand dollars he would give it to her, and if her daughter Elizabeth brings home a thousand dollars she would give it to her the same, and if either of the children wants money of her they would get it.' She said further that they had no children; 'neither was married of her children.'"

"Q. What was said, if anything, as to who should have it in case of the death of the other? A. She stated, Mrs. Reed, the mother, said that 'whoever will be left of these three will get all. I cannot tell exactly the words; that whoever was alive would get all they had.'"

At the close of this testimony the defendant rested his case.

John J. P. Read, one of the original plaintiffs in this action, was then living, and was placed on the stand by the plaintiffs, and did not contradict in any way the story told by the foregoing witnesses. He did admit, however, under cross-examination, that he furnished a description of the real estate to the sheriff to make the sale under the old judgment by default, and that he bid in the property at the sale in the name of his mother.

It appears in this record that the original plaintiffs, the children of Elizabeth Read, were both unmarried, and that they resided in the same house with the mother.

We are of opinion that this uncontradicted state of facts tends to show a community of interest and a joint action that justified the trial court in reaching the conclusion that Elizabeth Read could not have been, under the circumstances, a *bona fide* purchaser at the sheriff's sale.

It is strenuously insisted by the plaintiffs' counsel that the evidence tending to show that Elizabeth Read was not a *bona fide* purchaser was incompetent, and that her record title could not be attacked in such a manner.

If this alleged rule of evidence were sound, it would be quite impossible to inquire into the fact whether the grantee, in a sheriff's deed, was or was not a *bona fide* purchaser.

We think this line of proof was proper.

The result attained in this case seems to be in accordance with justice, the directed verdict is supported by the evidence, and affirmance would follow, as a matter of course, were it not for one exception that the appellant presents in this record.

As we have before intimated, the vital and controlling question in this case is, whether Elizabeth Read, the grantee in the sheriff's deed, was a *bona fide* purchaser.

In order to establish that she was not, the defendant, notwithstanding the objections of plaintiffs, was allowed to prove by the witnesses already referred to, facts which, uncontradicted, justified the trial judge in finding the fact to be that Elizabeth Read and her two children held their property very largely in common, and that, under the circumstances, the mother was chargeable with notice of the facts and proceedings leading up to the judgment by default in the old suit.

This line of proof by defendant opened the door for plaintiffs to introduce evidence to show, if possible, that there was no joint ownership of property, and that Elizabeth Read was a *bona fide* purchaser.

In making this attempt John J. P. Read was placed on the stand and plaintiffs' counsel offered to prove by him that the property involved in the old suit brought by Elizabeth A. S. Read, the daughter, against the Adlers, was conveyed to her in the lifetime of her father, and that neither her mother nor her brother had any interest therein, and that she was the sole owner of the judgment entered by default.

The court excluded the evidence and the plaintiffs' counsel excepted. This was clearly an erroneous ruling and went to the very heart and substance of the case.

We do not undertake to say how much weight the jury would have been justified in giving this evidence, but it was

material and tended to contradict, to some extent at least, the evidence introduced by defendant on the point of ownership in common of all property by Elizabeth Read and her two children.

The learned counsel for the defendant seeks to break the force of this exception by insisting that it was in no manner questioned that the title to the property involved in the eject-ment suit brought by Elizabeth A. S. Read stood in her name.

The offer of proof, however, went further than this, as plaintiffs' counsel proposed to show that Elizabeth A. S. Read took title in her father's lifetime, before this alleged joint ownership between Elizabeth Read and her children is said to have existed in all their property; that neither the mother nor brother had any interest in the property, and that the judg-ment recovered was as matter of fact the sole property of Elizabeth A. S. Read.

This proposed proof was an attempt to answer defendant's evidence already referred to, which tended to brush aside the mere outward indications of ownership, the paper titles, and reveal the actual fact whether their interests were joint or several.

We regret that this litigation, which has been so long pend-ing, should be sent back for a new trial, but there is no other course to pursue.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur, except GRAY, J., absent, and HAIGHT, J., not voting.

Judgment and order reversed.