WILLIAMS v. WILLIAMS et al.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. CONVERSION (§ 15*)—EQUITABLE CONVERSION—WILLS.

A will devising real estate to testator's wife for life, and declaring that, after her death, the property shall be sold and the proceeds equally divided between his children living at that time, affects an equitable conversion of the realty into money for distribution to the children,. but a sale is postponed until after the wife's death.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. § 15.*]

2. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF SALE. ·

An executor in a will devising real estate to testator's wife for life, and directing that, after her death, the same shall be sold and the proceeds equally divided between his children living at that time, has implied power to sell and distribute the proceeds among the children, but no trust is created or required in order to sell.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. § 138.*] ,

3. EXECUTORS AND ADMINISTRATORS (§ 121*)—POWER OF SALE—DEATH OF EXECUTOR.

The death of an executor before executing the power of sale conferred by a will directing a sale of real estate for distribution among beneficiaries named does not prevent a sale, but an administrator with will annexed may sell and distribute the proceeds, or a person appointed by the court for that purpose may exercise the power.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 493, 493½; Dec. Dig. § 121.*]

4. WILLS (§ 634*)—CONSTRUCTION—BENEFICIARIES—VESTED ESTATES. ·

A will devising real estate to testator's wife for life, and directing that after her death the same shall be sold, and the proceeds equally divided between his children living at that time, whether construed to equitably convert the real estate into personalty, or as disposing of the real estate, limits the ultimate beneficiaries to the children living at the death of the wife.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

5. WILLS (§ 629*)—CONSTRUCTION—VESTED ESTATES.

The rule that the construction which permits the vesting of devises as closely as possible after testator's death is favored is a rule of construction subordinate to the fundamental rule that the intention of testator governs.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1461, 1462; Dec. Dig. § 629.*]

McLennan, P. J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Chautauqua County Court.

Action by Joseph Williams against James Williams and others. From an interlocutory judgment, defendants appeal. Reversed, and complaint dismissed.

The facts are agreed upon. On the 27th day of September, 1897, William J. Williams, a resident of Chautauqua county, died seised in fee of the lands described in the complaint. He executed his last will and testament, which was duly admitted to probate, and left him surviving his widow, who died in 1909 and prior to the commencement of this action, and also four children and descendants of a deceased daughter. One son, Thomas, died intestate in 1902, survived by his widow and several children, of whom the plaintiff is one. The testator at the time of his death was 83 years of age, and executed his last will and testament five years before that event. By that instrument he gave the use of his homestead, comprising about 15 acres of land, and the premises involved in this action to his wife "so long as she shall live." The second clause of the will is as follows: "I declare that after the death of my wife that the homestead be sold and the proceeds be equally divided between my children that are living at that time, share and share alike." He named an executor, who duly qualified, but is now dead, and no administrator with the will annexed has been appointed. The rights of the parties depend upon the construction to be given to the last will and testament of the testator. The County Court held that the estate vested irrevocably upon the death of the testator, so that the children of Thomas Williams acquired the interest of their father.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

George H. Ansley, for appellants.

Daniel Reed, for respondent.

Joseph C. White, Special Guardian for Louise Emaline Farrell.

SPRING, J. [1] There is no devise of the little estate left by the testator to any of his children. He preferred to have the premises sold and the avails distributed after the death of his widow, and therefore directed that such mode be adopted. The gift was of money, not of land, and, because of the direction of the testator to sell the real estate, it became personal property. In no other way could the distribution of the money be made, and so there was what is known as an equitable conversion of this small farm into personalty. Meakings v. Cromwell, 5 N. Y. 136; Greenland v. Waddell et al., 116 N. Y. 234, 240, 22 N. E. 367, 15 Am. St. Rep. 400 et seq.; Cahill v. Russell et al., 140 N. Y. 402, 35 N. E. 664; Salisbury v. Slade et al., 160 N. Y. 278, 54 N. E. 741.

[2] The will was drawn by a farmer, and it is a reasonable inference that he did not appreciate the importance of endowing the executor with distinct authority to sell the premises. The omission, however, does not impede the primary purpose of the testator to convert the land into personal estate. The sale was necessary in order to make effective the bequests and the implied power to sell and distribute was consequently vested in the executor. (Cases cited.) No trust is created and no trustee is required in order to sell the land. The will itself converts the property into personalty and the executor simply disposes of it like any other personal property in his custody. Conversion into money is necessary that the gift may be made as the tes-

tator designed, and that change, of course, is a common one in the settlement and distribution of decedents' estates.

[3] Nor does the death of the executor before executing the power of sale prevent the consummation of the intention of the testator. There was no discretionary authority to sell. The direction was mandatory, positive, and the sale of the land was essential to the distribution of the estate. The executor therefore possessed the power to sell by virtue of his official authority, and no special or personal confidence was reposed in him separate from his office. An administrator with the will annexed could sell the land and distribute the avails in compliance with the imperative direction of the testator. Section 2613, Code of Civil Procedure; Clifford v. Morrell, 22 App. Div. 470, 48 N. Y. Supp. 83; Carpenter v. Bonner, 26 App. Div. 462, 50 N. Y. Supp. 298; Ayers v. Courvoisier, 101 App. Div. 97, 91 N. Y. Supp. 549; Mott v. Ackerman, 92 N. Y. 539, 552. Or it may be a person appointed by the court for that purpose could exercise the power. Royce et al. v. Adams, 123 N. Y. 402, 405, 25 N. E. 386; Cooke v. Platt, 98 N. Y. 35. The second clause of the will postpones the sale of the land until after the death of the wife of the testator, and the division is among his "children that are living at that time, share and share alike."

[4] It is the claim of the respondent that the title became absolutely vested at the time of the death. If so, Thomas Williams was one of the owners, and his interest, on his death, passed to his heirs at law, including the plaintiff. If there was an equitable conversion of the real estate into personalty, there was no devise and no vesting in any of the beneficiaries. In the second place, even if the land retained its identity as such, I think the clear intent of the testator was to limit the ultimate beneficiaries to those living at the death of the wife. If there was a vesting, it was subject to be divested when the period of division was reached.

[5] To be sure, the construction is favored which permits the vesting of devises as closely as possible after the death of the testator. Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20; Riker v. Gwynne, 201 N. Y. 143, 149, 94 N. E. 632; Van Deusen v. Van Deusen, 138 App. Div. 357, 122 N. Y. Supp. 718. The rule is a technical canon of interpretation and subordinate to the fundamental principle that the intention of the testator is the dominating guide in construing his will. In the cases where the technical rule has prevailed, the language employed in the will was ambiguous and the rendering in conformity with that rule apparently fulfilled the purpose of the testator as well as any that might have been adopted. See cases cited.

In the will we are considering the intention of the testator is explicitly stated, and limits the division of his property to the children living at the death of his wife. While the testator recognized equal obligations to his children, evidently he did not wish any further carving up of his small estate. We are well within the authorities in holding, even if there was a devise of the land, it did not become effective until the death of the wife, and then vested only in the children of the testator living at that time. Patchen v. Patchen et al., 121

N. Y. 432, 24 N. E. 695; Wright v. Wright, 140 App. Div. 634, 125 N. Y. Supp. 875. The conclusion reached, therefore, is that the plaintiff has no title in the premises described in the complaint.

The interlocutory judgment should be reversed and the complaint dismissed, with costs to the appellant in this court and to the appellant and special guardian in the court below.

So ordered. All concur, except McLENNAN, P. J., who dissents in an opinion.

McLENNAN, P. J. (dissenting). As I interpret the meaning of the will which is the subject of this litigation, the testator gave to his wife by absolute bequest all his household goods and personal property to be her own and in lieu of dower. He also gave to her the use of his homestead so long as she should live, which, as appears, consisted of about 15 acres of land situate in the village of Sheridan, N. Y. By the second provision of the will it is provided:

"Second: I declare that after the death of my wife, that the homestead be sold and the proceeds be equally divided between my children that are living at that time share and share alike."

Really, the only question involved here is whether the words, "at that time," used in the second clause of the will, refer to the time of the death of the testator or to the time of the death of his wife. It seems clear, under the authorities, that those words refer to the time of the testator's death rather than to the time of the death of his wife, the life tenant. If not, it is easy to imagine a situation where the testator would have died intestate as to the homestead. In that case this would certainly result if all his children had died between the time of his death, which occurred on the 27th day of September, 1897, and the death of his widow, which occurred on the 11th day of October, 1909, a period of upwards of 12 years. Can it be claimed that, under the language employed, it was intended by the testator that he should die intestate in case his children had all died between his death and the death of his widow, the life tenant? I think such, under the authorities, is not the fair interpretation of the will, but that, on the contrary, the interpretation of the learned surrogate is correct; that the words "at that time," used in the second paragraph of the will, refer to the time of the testator's death; that the property vested at that time, subject only to the life use of the widow, and that the children living at the time of her death, or the issue of such children who had died, took an equal share of the proceeds of the sale of such homestead; that the provision directing that the property should be sold and that the proceeds should be distributed was only prescribing a method of procedure, and did not in any manner affect the rights of the testator's children in the premises. It seems to me inconceivable that it was the intention of the testator that if three of his four children should die leaving issue before the death of his wife, and only one of such children should survive, perhaps, without issue, such survivor should take the whole of the homestead property to the exclusion of the issue of the other children.

In the case of Lewis v. Howe, 174 N. Y. 340, 346, 347, 66 N. E. 977, 978, one of the questions at bar was whether a remainder vested in an adopted daughter at the death of the testator, or whether a devise to her was defeated by her death before the death of the life tenant. Judge O'Brien, writing the opinion for the court, said:

"The question now is whether the remainder vested in the adopted daughter at the death of the testator, or was the devise to her defeated by her death before the life tenant. Except for the argument of the learned counsel for the plaintiff, I should suppose that such a question was not fairly debatable at this day, but he insists that it was defeated, and as to the remainder the testator died intestate. The clause contains a clear devise of a vested remainder in words denoting a present gift, since he says 'I give.' The words, 'to vest in her in fee upon the decease of my said wife' denote the time of possession and enjoyment. This clause of the will may be paraphrased as follows, in brief terms, and the meaning and legal effect will be clear: 'Subject to the power of sale contained in the first clause, I give to my adopted daughter the home where I now reside, to have and to hold forever, possession and enjoyment to vest upon the decease of my said wife.' The adopted daughter had a vested remainder under the will, which upon her death, passed to the defendants, her heirs, subject to the life estate of the widow. This conclusion cannot be avoided without violating the plainest and most important rules of construction. It is elementary law that the courts should adopt that construction, whenever possible, which will avoid intestacy, and which is most favorable to the vesting of the estate devised, and which will avoid the disinheritance of the remainderman who happen to die before the termination of the life estate. Matter of Russell, 168 N. Y. 175 [61 N. E. 166]; Connelly v. O'Brien, 166 N. Y. 406 [60 N. E. 20]; Matter of Brown, 154 N. Y. 313 [48 N. E. 537]; Hersee v. Simpson, 154 N. Y. 496 [48 N. E. 890]; Corse v. Chapman, 153 N. Y. 466 [47 N. E. 812]; Campbell v. Stokes, 142 N. Y. 23 [36 N. E. 811]; Haug v. Schumacher, 166 N. Y. 506 [60 N. E. 245]; Nelson v. Russell, 135 N. Y. 137 [31 N. E. 1008]; Moore v. Lyons, 25 Wend. 119. In the terse language of Chancellor Kent: 'It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, that makes the difference between the vested and the contingent interest.' 2 Kent's Com. 206. To hold that the testator intended by this clause of his will that no estate should vest in the adopted daughter except in the event that she survived the widow, and, in case she did not, that he intended to die intestate as to this property, would be pushing construction to the verge of absurdity. It would be a new principle in the construction of wills to hold that a man who had deliberately created a life estate in lands for the benefit of his widow and had limited upon that a remainder to his adopted daughter, all expressed in clear and appropriate words, nevertheless entertained the secret intention of dying intestate merely because he added to the devise of the remainder the words 'to vest on the death of my wife,' which expressed nothing more than what the law would do in case he had not used those words at all, since only upon the happening of that event does any such remainder ever vest in possession and enjoyment."

As before suggested, if the words "at that time," in the second clause of the will, are given the meaning suggested by the majority of the court, then it must follow, if all testator's children had died before the death of the widow, that he, the testator, would have died intestate as to the homestead property, and also that if all of said children, save one, had so died, such survivor would have taken the avails of all of such homestead property to the exclusion of the issue of the deceased children. It does not seem to me, under the authorities, that that can be the proper construction of that provision of the will. I think the learned surrogate properly held that the words used

in the second clause of the will, "at that time," had reference to the time of testator's death, and that the ownership of the homestead vested in his children as of that date, and that at the termination of the life estate each of the children then living and the issue of those who died were entitled to participate in the distribution of the proceeds of the sale of such homestead.

Assuming, for the purposes of this discussion, that the words, "at that time," referred to the time of the death of the widow, it is my opinion that those words had reference only to the time of the possession and enjoyment of the devise and that the ownership of the homestead property vested in the children at the time of the death of the testator, subject only to the life estate of his widow.

I therefore conclude that the decree of the surrogate was correct, and should be affirmed, with costs.