CLARK v. GROSH et al.

(Supreme Court, Trial Term, Clinton County. July, 1912.)

1. WILLS (§ 448*)—CONSTRUCTION—AVOIDING INTESTACY.

A construction of a will which will prevent intestacy will be favored, if possible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 964; Dec. Dig. § 448.*]

2. WILLS (§ 629*)—CONSTRUCTION IN FAVOR OF VESTING OF ESTATES.

The law favors that construction of wills which permits the vesting of devises as closely as possible after the testator's death, and avoids the disinheritance of remaindermen who may happen to die before the determination of the precedent estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1461, 1462; Dec. Dig. § 629.*]

3. WILLS (§ 439*)—CONSTRUCTION—INTENTION OF TESTATOR.

The fundamental principle for construing wills is that the intention of the testator is the dominating guide.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

4. WILLS (§ 634*)—CONSTRUCTION—VESTED OR CONTINGENT INTERESTS.

Where a testatrix gave real and personal property to a daughter for life, with remainder to a son should he be living at the death of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

daughter, and, should he be dead at the time, to his then living children, share and share alike, the fee in the real estate remained in the heirs of the testatrix subject to the life estate and to the contingency that the son should survive the life tenant or leave children surviving her, and the son took a vested title only in the event that he survived the daughter, and his children only in the event that he should die before the daughter leaving children surviving her.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

**5. WILLS (§ 456*)—CONSTRUCTION—MEANING OF LANGUAGE.**

The language of a will should be given its natural and rational meaning, and not a forced and unnatural meaning, for the purpose of spelling out a theory by which it can be said that the testatrix intended something which her language shows she did not intend.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. § 456.*]

**6. WILLS (§§ 523, 524*)—CONSTRUCTION—GIFT TO CLASS—TIME FOR ASCERTAINING CLASS.**

Where a testatrix devised property to a daughter for life with remainder to a son if he survived the daughter, and, if not, to his children should he leave any who survived the daughter, there being an uncertainty not only as to whether there would be any children living upon the death of the daughter, but also as to their number, the gift was to a class and the division was to be made among the persons coming within the class at the date when the division was to be made.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1115, 1116–1127; Dec. Dig. §§ 523, 524.*]

**7. BANKRUPTCY (§ 143*)—PROPERTY PASSING TO TRUSTEE—"ESTATE IN EXPECTANCY."**

Under Real Property Law (Consol. Laws 1909, c. 50) § 35, defining an "estate in expectancy" as one in which the right of possession is postponed to a future time, section 36, providing that a future estate is one limited to commence in possession at a future date, and section 40, providing that a future estate is vested when there is a person in being who would have an immediate right to the possession of the property on the determination of all intermediate or precedent estates, and is contingent while the person to whom, or the event on which, it is limited to take effect remains uncertain, where a testatrix devised land to a daughter for life with remainder to a son if he survived the daughter and if not to his children living at the time of the daughter's death, the interest of a child of the son, after his father's death, was "an estate in expectancy" and assignable under Real Property Law, § 59, providing that expectant estates are descendible, devisable, and alienable in the same manner as estates in possession, and hence it passed to the trustee in bankruptcy under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), providing that the trustee shall be vested with the bankrupt's title to all property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*

For other definitions, see Words and Phrases, vol. 3, p. 2588.]

**8. CHAMPERTY AND MAINTENANCE (§ 6*)—ASSIGNMENTS OF CHOSES IN ACTION AND CONTINGENT INTERESTS.**

The common-law doctrine of maintenance, prohibiting the assignment of choses in action and contingent interests to strangers, does not obtain in this state except as preserved by statute.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 5–8, 17–19; Dec. Dig. § 6.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action for partition by William O. Clark against Grace M. Grosh and others. Decree ordered as indicated in the opinion.

W. H. Dunn, of Champlain, for plaintiff.

Harry M. Ingram, for defendant Dennis B. Lucey, as trustee.

William H. McCormick, of New York City, for defendants Grace M. Grosh, Albert S. Grosh, Ethel Shieler, Bert A. Shieler, and Roswell P. Matteson.

John H. Booth, of Plattsburgh, for defendant John N. Moore.

BORST, J. This action is brought to partition certain lands known as the Champlain Hotel property situate on the shores of Lake Champlain, and of which John J. Matteson died seised.

The questions presented for solution arise between the defendants Roswell P. Matteson and Dennis B. Lucey, his trustee in bankruptcy, over an interest in the property which but for the bankruptcy proceedings it is conceded would pass to the defendant Matteson. The facts in the case are stipulated.

John J. Matteson died in 1898 leaving his widow, Jane, his daughter, Florence Edna Clark, and a son, Herbert L., and a will, which was admitted to probate, bearing date September, 1897, the material portions of which read as follows:

"After all my lawful debts are paid and discharged, I give and bequeath all my property both real estate and personal of every kind and nature whatsoever and wheresoever situated and located unto my wife Jane Caroline Matteson and my daughter Florence Edna Clark to share equally. The Champlain House and all real estate attached thereto not to be sold or disposed of so long as both parties live."

Jane, the widow, died in 1901, owning the one-half interest in the hotel property devised to her by her husband, and leaving her surviving her daughter Florence and son Herbert L., and leaving a will, dated 1898, which was admitted to probate, the material portions of which read as follows:

"I give and bequeath to my daughter Florence Clark the use during her life time of all the property real and personal I may have at the time of my death to be used and enjoyed by her without molestation or hindrance from any one.

"After the use aforesaid, I give, devise and bequeath to my son Herbert L. Matteson all the rest residue and remainder of all the property real and personal I may have at the time of my death should he be alive at the death of my said daughter Florence Clark should he be dead at the time I direct that the property herein bequeathed to him be divided equally between his then living children share and share alike."

The son Herbert L. Matteson died in 1903, leaving him surviving his widow, Mary, his two daughters Grace and Ethel and his son, the defendant Roswell P. Matteson, and a sister Florence Edna Clark. Florence Edna Clark died in October, 1912, leaving all her property by her will to her husband, the plaintiff in this action. The defendant Matteson would own in fee as tenant in common with the other interests a one-sixth of the real estate in question, unless his trustee in bankruptcy is entitled to the same, and this presents the sole question for solution in this case.

The answer to this question depends upon whether Roswell P. Matteson had such an interest in the property provided by section 70 of the Bankruptcy Act "which prior to the filing of the petition·(against him in bankruptcy) he could by any means have transferred or which might have been levied upon and sold under judicial process against him." The question presented seems to have frequently perplexed the reasoning powers of the courts with different conclusions as the result.

It is urged by counsel for the trustee with great ingenuity of argument that the words "his then living children" relate to the time of the death of the testatrix; that the adverb "then" in that clause is one of time and refers to the time of the event contained in the clause, "all the property real and personal I may have at the time of my (Jane C. Matteson) death"; that Herbert Matteson took a vested title subject to have it divested by his dying before Florence, but in that event the title vested in his children "then living" at the time of "my (Jane C. Matteson) death."

[1] It is true that in the interpretation of wills such a construction will be favored, if possible, which will prevent intestacy. Should Herbert have died before Florence leaving no children him surviving, Jane would have died intestate as to the property in question.

[2] The law favors that construction which permits the vesting of devises as closely as possible after the death of the testator, and avoids the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. It is also said that the presumption is that a testator intends that his dispositions shall take effect in enjoyment or interest at the date of his death, and upon the happening of that event, unless the language of the will by fair construction makes his gifts contingent, they will be regarded as vested; that words of survivorship and gifts over on the death of the primary beneficiary are to be construed, unless a contrary intention appears, as relating to the death of the testator. Lewis v. Howe, 174 N. Y. 340, 346, 66 N. E. 975, 1101; Hersee v. Simpson, 154 N. Y. 496, 500, 48 N. E. 890; Connelly v. O'Brien, 166 N. Y. 406, 408, 60 N. E. 20.

[3] The dominant rule however, of interpretation of wills, and which is said to be the fundamental principle in their construction, is that the intention of the testator is the denominating guide in construing his will.

[4] I think under this last rule Herbert L. Matteson took a vested title in the property of Jane C. Matteson which she had at the time of her death only in the event that he should survive the daughter, Florence Clark, and in case he was dead at that time, then, if he left children, and in that event only, they would take such title. The word "then" in the last line of the clause in the will in question must be understood to refer to some preceding event, and the only° event to which it can refer from the language employed is the·death of the daughter Florence.

[5] We are not permitted to read into the will language which was not used by the testatrix. And while recognizing the rule that the will should be so construed as to provide for descendants of the testatrix, if that is possible, it is equally true that to do that resort should not

be had to strained construction or the making of a new will for the testatrix. In construing this will we should give the language used its natural and rational meaning, and not a forced and unnatural meaning, for the purpose of spelling out a theory by which it can be said that the testatrix intended to do something which her language shows she did not intend to do. The following authorities clearly support the contention here suggested: Carmichael v. Carmichael, 1 Abb. Dec. 309; Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; Schwencke v. Hafner, 18 App. Div. 182, 45 N. Y. Supp. 937; Williams v. Williams, 152 App. Div. 323, 136 N. Y. Supp. 990; Wright v. Wright, 140 App. Div. 634, 125 N. Y. Supp. 875.

[6] Further, here there was an uncertainty not only as to whether there would be any children of Herbert Matteson living on the death of Florence, but also their number in case that were any of that class. In such case the gift is to a class. Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Herzog v. Title Guaranty & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146. Now when division and distribution is to be made among a class, the benefits of the will are usually confined to those persons who come within the class at the date when distribution is to be made. Matter of Baer, 147 N. Y. 348, 41 N. E. 702; Matter of Crane, 164 N. Y. 71, 58 N. E. 47. The fee in the real estate of Jane C. Matteson despite the will, therefore, remained in her heirs, subject to the life estate of Florence Edna Clark, and to the contingency that Herbert L. Matteson survive her or leave children her surviving. This clearly appears when we recall that, should Herbert die leaving no children before the death of Florence, the real property of Jane would be undisposed of.

[7] The estate of Herbert and his children was one in expectancy, as they were not entitled to its immediate possession on the death of the testatrix. Section 35, Real Property Law (Consol. Laws 1909, c. 50). By section 36 of the same law, expectant estates are of two kinds, future and reversionary; while section 37 provides that a future estate is one limited to commence in possession at a future day, clearly including the estate of Herbert and his children in the property of testatrix. Section 40 defines when future estates are vested and when contingent, as follows:

"A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

The question of vesting or not vesting therefore depends on whether the gift is immediate and the time of payment or enjoyment only postponed. If the gift is not immediate, then there is no vesting. In this case the gift depended on Herbert Matteson or children of his surviving the life tenant, and hence by the terms of the statute was not vested, but contingent. Matter of Embree, 9 App. Div. 604, 41 N. Y. Supp. 737; Miller v. Gilbert, 144 N. Y. 73, 38 N. E. 979; Schell v. Carpenter, 50 Misc. Rep. 404, 100 N. Y. Supp. 554; McGillis v. McGillis, 154 N. Y. 532, 540, 49 N. E. 145.

We come, therefore, to the question, Could this contingent interest, which the defendant Roswell P. Matteson had after the death of his father in the estate of the testatrix and at the time of the filing of the petition against him in bankruptcy, by any means have been trans- ferred by him, or could it have been levied upon and sold under ju- dicial process? He could undoubtedly have disposed of that possi- bility, if he could have found any one to buy it, so effectually that up- on the happening of the contingency he would be estopped from de- nying his grantee's right to recover it. But would he sell property or only a chance that he might thereafter become entitled to property? Could the principle of estoppel be invoked in favor of an involuntary transfer, and would such transfer have anything to stand upon? Hen- nessy v. Patterson, 85 N. Y. 91; Miller v. Emans, 19 N. Y. 384. There is authority to the effect that this contingent interest of the defendant Matteson was not assignable, and did not pass to his trustee in bank- ruptcy. This was squarely held by Judge Bradford in Re Wetmore, 6 Am. Bankr. R. 210, 214, 108 Fed. 520, 47 C. C. A. 477, and again in the same volume in Re Twaddell (D. C.) 6 Am. Bankr. R. at page 539, 110 Fed. 145. To the same effect Re Hoadley (D. C.) 3 Am. Bankr. R. 780, 101 Fed. 233; Collier on Bankruptcy (9th Ed.) 1007; Jackson v. Middleton, 52 Barb. 9; Re Nelson St. John (D. C.) 5 Am. Bankr. R. 190, 105 Fed. 234.

From the statement of facts in this case, it appears that the defend- ant Matteson was living at the time of the making of the will of tes- tatrix; hence the remainder while it was subject to be defeated by his father surviving Florence, or his (Roswell's) death before her death, yet that remainder was to a person in esse. This, therefore, does not present the case of a remainder limited to the heirs of one now alive, for in such case, until the death of the ancestor, the determination as to who would be heirs is undetermined. A remainder to a person not in esse it can be seen cannot be transferred because there is no one in being by whom it is owned. Here, however, the remainderman was living at the time of the creation of the interest. We have seen that this interest of the defendant Matteson in the estate of the tes- tatrix was an estate in expectancy. Such an estate is defined by sec- tion 59 of the Real Property Law, as follows:

"Qualities of expectant estates: An expectant estate is descendible, de- visable and alienable, in the same manner as an estate in possession."

It may well be that there may be contingent expectant estates and this may be one, which are not descendible nor devisable, yet this does not militate against its assignability. Moore v. Littel, 41 N. Y. 66; Griffin v. Shepard, 124 N. Y. 70, 26 N. E. 339. It does not seem that a case could be stated which more clearly falls within the provisions of the statute than the one under consideration.

[8] Contingent interests at common law were not assignable to strangers for the same reason—to prevent maintenance—that choses in action were not assignable. But such interest could be assigned to a party already having a vested interest in the premises. Remoteness of the contingency was no objection to such a transfer. The doctrine of maintenance, however, no longer obtains in this state, except only

when preserved by statute. The reason for the statute which permits the assignment was undoubtedly to make certain that doctrine which might be thought to still survive.

Recent decisions of the courts uphold the assignment and the alienability of such a contingent expectant estate as was held by the defendant Matteson at the time of the filing of the petition against him in bankruptcy. In National Park Bank v. Billings, 144 App. Div. 536, 129 N. Y. Supp. 846, affirmed 203 N. Y. 556, 96 N. E. 1122, a will created a trust in personal property during the life of testator's wife, and upon her death the trustee was to divide the property equally and pay it to his son and daughter if they were then living. It was held that this was the gift of a contingent future interest to the son and alienable, and could be reached by a judgment creditor of the son. It was pointed out by the learned judge writing the opinion that the same rule prevails with reference to a contingent remainder in realty. Moore v. Littel, 41 N. Y. 66, Dodge v. Stevens, 105 N. Y. 585, 588, 12 N. E. 759, Green v. Head, 54 Misc. Rep. 454, 457, 104 N. Y. Supp. 383, Ham v. Van Orden, 84 N. Y. 257, N. Y. Life Ins. Co. v. Cary, 191 N. Y. 33, 41, 83 N. E. 598, and In re St. John (D. C.) 5 Am. Bankr. R. 190, 105 Fed. 234, are authorities sustaining the assignability of such an interest whether in real or personal property. It accords with the progress of the age that every right and interest may be assigned. The defendant Matteson had a right which might or might not ripen into his possession. Reason and precedent at this time are to the effect that he may dispose of such right, and that his assignee will get the benefit of whatever right might thereafter accrue to him Matteson but for the transfer of such right. That right may be called a possibility, a chance, or by any other name, yet it is a property right, and by virtue of the Bankruptcy Act will pass to his trustee, and this whether such interest be called vested or contingent.

I am therefore of the opinion that the interest of the defendant Matteson in the property in question is lodged in Lucey, the trustee, to the exclusion of the defendant Matteson. A decree may be prepared accordingly.